## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------x
In re                                 :   Chapter 15
                                      :
Altos Hornos de México, S.A.B. de C.V.¹,  :   Case No. 16-11890 (    )
                                      :
        Debtor in a Foreign Proceeding.   :
-------------------------------------------------x
```

## VERIFIED PETITION FOR (I) RECOGNITION OF
## FOREIGN MAIN PROCEEDING; (II) ENFORCEMENT OF
## LIFTING ORDER; AND (III) CERTAIN RELATED RELIEF

Francisco Javier Gaxiola Fernández, in his capacity as the duly appointed,

proposed foreign representative (the "Petitioner" or the "Foreign Representative") of the above-

captioned debtor (the "Debtor" or "AHMSA") in a proceeding (the "SP Proceeding") under

Mexico's Bankruptcy and Suspension of Payments law (the "SP Law"),² pending before the

First Civil Court of First Instance for the Judicial District of Monclova, Coahuila, Mexico (the

"Mexican Court"), respectfully submits:  (a) the chapter 15 petition of the Debtor filed

contemporaneously herewith (the "Chapter 15 Petition"); and (b) this verified petition (the

"Verified Petition") seeking entry of an order substantially in the form attached hereto as

Exhibit A (the "Proposed Order") (i) recognizing the SP Proceeding as a foreign main

proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy

Code"); (ii) recognizing the Petitioner as the "foreign representative," as defined in section

101(24) of the Bankruptcy Code, in respect of the SP Proceeding; (iii) giving full force and

effect in the United States to the order issued on May 16, 2016 by the Mexican Court (the

---

[1]     The last four digits of the Debtor's U.S. and Mexican taxpayer identification numbers are 0706 and 6U10, respectively.  The Debtor's executive headquarters are located at Prolongación Juarez s/n, Col. La Loma, Monclova, Coahuila, Mexico, 25770.

[2]     In 2000, after the commencement of the SP Proceeding, the SP Law was superseded by the *Ley de Concurso Mercantiles* (the "Concurso").  Pursuant to applicable Mexican law, the SP Proceeding continues under the SP Law notwithstanding the enactment of the Concurso.  See Transitional Article 5 of Concurso.

"Lifting Order")[3] approving the Debtor's General Payment Agreement (the "Mexican Plan")

and lifting the Debtor's suspension of payments, including any extensions or amendments

thereof authorized by the Mexican Court; (iv) as provided in the Mexican Plan, as approved by

the Lifting Order, permanently enjoining all persons from commencing or taking any action in

the United States to obtain possession of, exercise control over, or assert claims against the

Debtor or its property in the United States; and (v) granting such other and further relief as this

Court deems just and proper.  In support of the Verified Petition, the Foreign Representative

refers the Court to the statements contained in the (x) *Memorandum of Law In Support of*

*Verified Petition for (I) Recognition of Foreign Main Proceeding; (II) Enforcement of Lifting*

*Order; and (III) Certain Related Relief*, (y) *Declaration of Francisco Javier Gaxiola Fernández*

*in Support of Chapter 15 Petition and First Day Pleadings* (the "Foreign Representative

Declaration"), and (z) *Declaration of Jaime García Priani In Support of the Verified Petition for*

*(I) Recognition of Foreign Main Proceeding; (II) Enforcement of Lifting Order; and*

*(III) Certain Related Relief* (the "SP Expert Declaration"), each of which is filed

contemporaneously herewith and incorporated herein by reference.  In further support of this

Verified Petition and request for related relief, the Foreign Representative respectfully

represents as follows:

## PRELIMINARY STATEMENT

1.     The Debtor, which is headquartered in Monclova, Coahulia, Mexico and

incorporated under Mexican law, is one of the largest integrated steel producers in Mexico.  The

Debtor also manufactures various steel, plate and tin products and distributes such products

primarily in Mexico but also globally—including in the United States.

---

[3]     A certified English translation of the Lifting Order is attached to the Foreign Representative Declaration as Exhibit D.

2.      In the late 1990s, the Debtor suffered financial distress due to, among other things, a decline in steel prices.  As a result, the Debtor and four of its subsidiaries filed for protection under the SP Law on May 24, 1999.[4]  The SP Law was a form of legal protection in Mexico that allowed companies to seek a debt restructuring with their creditors in an orderly fashion while continuing operations and avoiding liquidation of assets.  On May 25, 1999 (the "SP Commencement Date"), the Mexican Court entered an order commencing the SP Proceeding (the "SP Commencement Order"), which granted a stay of creditor actions for the benefit of the Debtor, halted the accrual of interest on all outstanding unsecured debt, and converted all obligations denominated in a currency other than Mexican pesos into Mexican pesos.

3.      The SP Proceeding is one of the largest and most complicated restructurings in Mexican history, requiring the resolution of all claims against AHMSA before creditors could vote on the Mexican Plan and the restructuring could be consummated.  Due to the complex nature of the restructuring, substantial claims filed against AHMSA by potential creditors in excess of amounts legitimately due, litigation commenced by certain creditors seeking to annul the declaration of suspension of payments, lack of time limits imposed by the SP Law on various procedural stages, patience of stakeholders of the Debtor given the worldwide financial crisis and the Debtor's turbulent business cycle and approximately $1.7 billion (USD) in "recognized" general unsecured claims lodged against the Debtor, the SP Proceeding has continued for approximately seventeen years.  Now, after years of negotiation and compromise with its creditors, the Debtor, as required under the SP Law, received approval

---

[4]      Namely, the four subsidiaries of the Debtor are Minera Carbonífera Río Escondido, S.A. de C.V., Minerales Monclova, S.A. de C.V., Minera del Norte, S.A. de C.V. and Cerro de Mercado, S.A. de C.V. These entities previously emerged from protection under the SP Law in 2006 and 2008, respectively, and the four former subsidiaries merged into one company, Minera del Norte, S.A. de C.V.

of the Mexican Plan from both (a) creditors representing approximately 61% of the total creditors holding recognized unsecured claims and 75.5% of the aggregate value of the recognized unsecured claims,[5] and (b) the Mexican Court (as set forth in the Lifting Order).  The approved Mexican Plan is now being consummated and implemented.

4.       The Foreign Representative now commences this chapter 15 case to seek the assistance of this Court to give effect in the United States to the Mexican Plan and the Lifting Order and to assist the Mexican Court in connection with the restructuring of the Debtor.  In order to eliminate the risk of litigation in the United States by any creditor in contravention of the Mexican Plan and to permit the orderly implementation of the Mexican Plan, the Lifting Order and the Mexican Plan should be recognized and enforced in the United States.  By this Verified Petition, the Foreign Representative requests the assistance of this Court to promote the finality of this unique and complex restructuring by: (a) recognizing the SP Proceeding as a foreign main proceeding; (b) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the SP Proceeding; (c) giving full force and effect in the United States to the Mexican Plan and the Lifting Order (as may be extended, modified or amended by the Mexican Court); (d) permanently enjoining all persons from taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property in contravention of the Mexican Plan and the Lifting Order; and (e) granting certain related relief.

5.       As set forth below and in the Memorandum of Law and the Foreign Representative Declaration, all statutory elements for the relief requested herein are satisfied, and

---

[5]       Under the SP Law, a plan seeking to pay 100% of Recognized Claims within three years of the lifting of the debtor's suspension of payments may only be approved if creditors equaling at least one third of the total creditors holding recognized unsecured claims and holding at least one half the aggregate value of the recognized unsecured claims vote in favor of the plan (combined, the "Requisite Creditor Consent").  See SP Expert Declaration at ¶¶ 24 and 29.

the Foreign Representative therefore respectfully requests that the Court grant this Verified

Petition.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction to consider the Motion pursuant to sections 157

and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference

from the United States District Court for the District of Delaware dated as of February 29, 2012.

These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by

the filing of this Verified Petition and the Chapter 15 Petition pursuant to sections 1504 and 1515

of the Bankruptcy Code.  This is a core proceeding under section 157(b)(2)(P) of title 28 of the

United States Code.  Venue is proper in this District pursuant to section 1410 of title 28 of the

United States Code.  The statutory predicates for the relief requested herein are sections 105(a),

362, 1501, 1517, 1521 and 1525 of the Bankruptcy Code.

## BACKGROUND

**I.      *The Debtor's Business***

7.       As set forth in the Foreign Representative Declaration, the Debtor is one

of the largest integrated steel producers in Mexico and is engaged in the manufacture and

distribution of steel and steam coal products.  The Debtor produced approximately 4.46 million

tons of liquid steel and 3.84 million tons of finished steel products in 2015.  The steel segment

manufactures steel products through an integrated process, beginning primarily with internal

sources of finished products.  The steam coal segment extracts and sells steam coal used to

generate electrical energy and metallurgical coal and iron ore for use in the Debtor's steel

segment.  The Debtor manufactures a variety of flat steel products (such as plate, hot rolled coil,

cold rolled coil and tinplate) as well as certain long steel products (such as heavy beams).

8.      Historically, the Debtor's principal market for its products has been Mexico, where the Debtor has held a significant market share for flat products since 1998.  In the Mexican domestic market, the Debtor's products are used primarily in the construction, manufacturing, petroleum, automotive, packaging, and home appliance industries.  The Debtor also exports, directly or through steel traders, to a variety of end users, primarily those in the manufacturing, construction and tubing industries.  Export sales in 2015 were 536,000 tons, representing 14% of the Debtor's sales volume of steel products and 13% of the Debtor's net sales of steel products.  As of December 31, 2015, the Debtor generated revenue of 41,100 million pesos (i.e., $2,593 million (USD)) and produced EBITDA of 218.97 million pesos (i.e., $15.268 million (USD)).

9.      The Debtor's main steel making facilities and corporate offices are located in Monclova, Coahuila, Mexico.  These facilities are located close to transportation lines, raw materials supplies, principal points of export and the Debtor's major domestic markets.  Furthermore, the Debtor's senior management directs all aspects of the Debtor's operations from the Monclova corporate offices.

10.     The Debtor also owns substantially all of its iron and coal mines, all located within 290 kilometers of the Debtor's main steel making facilities.  Through its subsidiary Minera del Norte, S.A. de C.V. ("MINOSA"), the Debtor operates three iron ore mines that supplied 89% of the Debtor's iron ore requirements in 2015.  In addition, the Debtor operates open pit and underground coal mines that supplied 81% of the Debtor's metallurgical coal requirements in 2015.

11.     The Debtor, through MINOSA, is also engaged in the production and sale of steam coal, a key raw material for the electric utility industry.  In 2015, MINOSA produced 8.44 million tons of steam coal and sold 6.73 million tons.

12.     As of December 31, 2015, the Debtor had 20,435 employees.  At that date, approximately 7,367 employees were non-union employees and approximately 12,798 were union employees.  The Debtor and its subsidiaries have signed collective bargaining agreements which provide for annual revisions to base salary and biannual adjustments to benefits in accordance with applicable Mexican law.  In the past 25 years, neither the Debtor nor any of its subsidiaries has experienced a strike.

## II.     *The Debtor's Corporate Structure*

13.     Prior to the entry of the Lifting Order approving the Mexican Plan, Grupo Acerero del Norte, S.A. de C.V. ("GAN"), a non-Debtor,[6] was the Debtor's majority parent, owning approximately 76.1% of the Debtor's outstanding common equity.[7]  GAN owns a conglomerate of companies operating in the segments of steel mills, chemical, mining and energy.  GAN's operations include activities related to the manufacturing of basic raw materials derived from steel, hot rolled strips, structural shapes, light sections, cold rolled sheet, tinplate and tin free steel.  GAN is a privately held company, incorporated under the laws of Mexico and its headquarters are based in Mexico City, Mexico.

14.     Following the entry of the Lifting Order, the Debtor's corporate structure is now as follows: (a) creditors that made an Equity Election (defined below) collectively own

---

[6]     GAN is currently a debtor under the SP Law, petitioning for protection under the SP Law on May 18, 1999.  GAN's pending proceeding under the SP Law is separate and distinct from the Debtor's SP Proceeding.

[7]     Prior to the entry of the Lifting Order approving the Mexican Plan, approximately 4% of the Debtor's common equity was owned by its officers and directors, and the remaining approximate 20% of the Debtor's common equity, which was publicly traded on the Mexican Stock Exchange prior to the suspension of trading in 1999, was owned by its public stockholders.

26.4% of the Debtor's common equity,[8] (b) GAN owns 57.8% of the Debtor's common equity (exclusive of common equity received by a subsidiary of GAN that made a valid Equity Election with respect to its claims against the Debtor), and (c) the Debtor's officers and directors and public stockholders hold the remaining 15.8%.

      15.     The Debtor owns substantially all of the equity of its principal direct and indirect subsidiaries as depicted in the organizational chart below:



    * MINOSA/Cerro, MIMOSA and MICARE are business units of MINOSA, the mining subsidiary of AHMSA.

---

[8]    The issuance of equity to certain of AHMSA's creditors required the approval of the Mexican Federal Competition Commission (the "FCC").  On June 24, 2016, the FCC notified those creditors that the approval for the issuance of the equity expired on June 15, 2016, and that in the view of the FCC, the shares had not been issued prior to such date.  The creditors and the Debtor have submitted a revised application to the FCC.  The percentages listed herein assume that the revised application will be approved and that all shares for which Equity Elections were made are issued to creditors.

16.     Substantially all of the Debtor's operations in the United States are conducted through its wholly-owned subsidiary, AHMSA International, Inc. ("AHMSA International"), a Delaware corporation.  AHMSA International specializes in the distribution of flat rolled carbon steel, heavy structural shapes and plates used in various applications including fabrication, tubing, pipe, construction and OEM manufacturing industries.

17.     As discussed above, the Debtor also owns substantially all of its iron and coal mines, which provide the Debtor with necessary raw materials.  The Debtor's iron and coal mines are operated through its subsidiary MINOSA.  The Debtor's steel distribution primarily takes place through its subsidiary, Nacional de Acero.  In addition, the Debtor's production of steam coal takes place through MINOSA.

18.     As described in the Foreign Representative Declaration, all of the Debtor's key corporate functions are managed and performed in Monclova, Coahuila, Mexico, including treasury, corporate finance and accounting, strategic decision making, communications and investor relations, human resources, payroll, information technology, new business development initiatives, pricing and equipment acquisition.  All of the Debtor's key contractual arrangements, including leases, insurance and other key corporate documents, are negotiated, arranged, and maintained in Mexico.  Corporate books and records are also maintained in Mexico.

### III.     *The Debtor's Debt Structure*

19.     Prior to the SP Commencement Date, pursuant to an Indenture dated as of May 6, 1997, the Debtor issued $200 million (USD) of 11 3/8% Series A Senior Notes due April 30, 2002 (the "Series A Notes") and $225 million (USD) of 11 7/8% Series B Senior Notes due April 30, 2004 (the "Series B Notes").  Pursuant to an Indenture dated as of December 16, 1996, the Debtor issued $85 million (USD) of 5.5% Senior Discount Convertible Notes due 2001 (the "Senior Discount Convertible Notes").  Pursuant to a credit agreement dated as of April 11,

1997, the Debtor entered into a syndicated loan for $330 million (USD) structured by Morgan Guaranty Trust Company of New York, which loan consisted of two tranches: (a) Tranche A in the amount of $303 million (USD) due April 16, 2002 and (b) Tranche B in the amount of $27 million (USD) due April 16, 2004.  Pursuant to a credit agreement dated October 17, 1996, the Debtor also obtained a loan from Banco Nacional de México, S.A. for $70 million (USD) due August 11, 2000.  Pursuant to a credit agreement dated as of December 30, 1996, the Debtor obtained another loan from Bank of Tokyo Mitsubishi LTD for $9 million (USD) due October 30, 2001.  Pursuant to a credit agreement dated as of July 22, 1997, the Debtor obtained an additional loan from Banco Nacional de México, S.A. for $50 million (USD) due August 11, 2000.  Pursuant to a certain credit agreement dated as of  September 8, 1997, the Debtor obtained a loan from Bank of America National Trust and Saving Association for $125 million (USD) due July 8, 1999.  Pursuant to a certain Credit Agreement dated January 19, 1998, the debtor obtained a loan from Banco Inverlat, S.A. for $30 million (USD), due January 19, 2001.  Pursuant to a certain Credit Agreement dated March 3, 1998, the debtor obtained a loan from Banco Inverlat, S.A. for $20 million (USD), due March 3, 2001.  Pursuant to a Long Term Trade Finance Facility, the debtor obtained financing from West Merchant Bank Limited for $37.5 million (USD), due June 22, 2003.  Pursuant to a Long Term Trade Finance Facility, the debtor obtained financing from West Merchant Bank Limited for $10 million (USD), due August 28, 2003.  In addition, the Debtor owed approximately $91 million (USD) to various trade vendors, among other debt.  The Debtor had no secured debt.

20.    Following the entry of the Lifting Order, as described further below, Recognized Claims were converted into the Mexican Peso equivalent amount of SP Three-Year Payments (as defined below).  In addition, eligible creditors were entitled to make an Equity

Election (as defined below) to exchange 69.15% of their SP Three-Year Payments for a combination of cash and common shares in the reorganized Debtor. The net amount of the SP Three-Year Payments issued after giving effect to the Equity Elections is 8,845.7 million pesos.

## IV.    *Events Leading to Filing for Chapter 15 Relief*

21.    On the SP Commencement Date, the Debtor obtained a judicial declaration of suspension of payments under the SP Law amidst falling steel prices. As a result of filing for protection under the SP Law, among other things: (a) the Debtor was granted protection from creditors' attempts to collect on any indebtedness arising out of transactions completed prior to the SP Commencement Date; (b) interest ceased to accrue on all of the Debtor's outstanding unsecured indebtedness; and (c) all of the Debtor's obligations denominated in a currency other than Mexican pesos were deemed converted into Mexican pesos at the prevailing exchange rate on the SP Commencement Date.[9]

22.    During its approximately seventeen years of protection under the SP Law, the Debtor was involved in complex negotiations regarding the restructuring of its outstanding indebtedness with groups of its creditors, which ultimately culminated in the Mexican Plan.[10] In connection with such negotiations, on November 7, 2014, the Debtor, GAN (as the Debtor's majority shareholder), and certain funds associated with D.E. Shaw & Co, LLP and Black River

---

[9]    On the SP Commencement Date, the prevailing exchange rate was 9.5468 pesos to $1.00 (USD).

[10]    As further described in the SP Expert Declaration, the SP Proceeding lasted approximately seventeen years due to a number of different reasons. One reason, *inter alia*, is that under the SP Law, all claims against a debtor must first be resolved before a meeting of creditors may be called to consider a proposed plan. The Debtor's restructuring was extremely complex as it involved over nine hundred creditors and approximately $1.7 billion in debt. This claims resolution process was further complicated by the fact that many of the Debtor's creditors engaged in protracted, time-consuming litigation over their claims (including various appeals to higher courts), which had to first be resolved before the Creditors' Meeting could be held and the Mexican Plan approved. See SP Expert Declaration at ¶¶ 41-42. In addition, under the SP Law, if a proposed plan does not garner the required creditor support, the debtor is forced to convert its case to a liquidation. Accordingly, the Debtor had to negotiate extensively with creditors to ensure that it had adequate support for the Mexican Plan to avoid liquidation of the Debtor. See SP Expert Declaration at ¶ 43.

01:19096926.4

Asset Management LLC (collectively, the "Plan Supporters") entered into a Conditional

Agreement (as amended, the "Conditional Agreement") in order to facilitate the Mexican Plan

and to reduce the Debtor's debt burden upon the lifting of the SP Proceeding.

23.    The Conditional Agreement required, among other things, that the Debtor

seek the Mexican Court's and creditors' approval of the Mexican Plan, which provides for

payment to each unsecured creditor of the amount in Mexican Pesos of its Recognized Claims

(as defined below) on the third anniversary of the Lifting Date—which payment, under the SP

Law, constitutes payment in full satisfaction of all Recognized Claims (as defined below).  The

Conditional Agreement also obligated the Debtor and GAN to support a capital increase (the

"Capital Increase") required to issue new shares to creditors pursuant to the terms of the Mexican

Plan and the Conditional Agreement.  The Plan Supporters also agreed in the Conditional

Agreement to support the Mexican Plan and to make Equity Elections (as defined and described

below) in the collective amount of 5,613,518,400 pesos.  Under the Conditional Agreement, the

Plan Supporters are not entitled to different economic incentives or entitlements under the

Mexican Plan than any other similarly situated creditor.  The Plan Supporters will receive the

same economic treatment on account of their claims as other similarly situated creditors under

the Mexican Plan.[11]

24.    On December 7, 2014, the Debtor filed the Mexican Plan with the

Mexican Court, and on December 17, 2015, the Mexican Court entered an order (the "Creditors

---

[11]    The Plan Supporters are receiving certain benefits under the Conditional Agreement which are not available to creditors not party to the Conditional Agreement.  Specifically, pursuant to the terms of the Conditional Agreement, the reasonable fees and expenses of the Plan Supporters' professionals which are incurred in connection with certain aspects of the SP Proceeding and this Chapter 15 Case were paid by the Debtor.  The Plan Supporters also agreed to provide releases to certain non-debtor affiliates and received (a) certain releases from GAN and the Debtor for any and all claims which are related to the Debtor's restructuring and (b) certain governance rights with respect to their equity ownership of the Debtor, such as appointment of directors and veto rights over certain corporate actions, each as further described in the Conditional Agreement, which is attached to the Disclosure Statement.

Meeting Order") scheduling the meeting of creditors (the "Creditors Meeting") where the

Debtor's creditors would meet and vote on whether to approve the Mexican Plan.  The Debtor

caused notice of the Creditors Meeting to be published in (a) several newspapers in Mexico: the

*Diario Oficial de la Federación, El Zócalo*, *El Norte*, *Mural*, *Reforma*, and *El Sol de San Luis*

from February 2 through February 4, 2016 and (b) the *Wall Street Journal* (National Edition) in

the United States on February 18, 2016.  Although not required under SP Law, the Debtor sent

an English language disclosure statement (the "Disclosure Statement") to its U.S. Recognized

Creditors and Noteholders, as defined below, and launched a publicly available website,

cases.primeclerk.com/AHMSA15, which contained the Disclosure Statement and other

information regarding the Debtor's restructuring.  The Disclosure Statement provided all

required information about the Conditional Agreement, the Mexican Plan, the Debtor's business,

and notice of the Creditors Meeting.  The Debtor sent this disclosure statement to U.S.

Recognized Creditors and Noteholders to ensure that they would receive adequate notice and

information about the Mexican Plan, the Debtor's restructuring and the Creditors Meeting.[12]  The

Debtor also established for (a) creditors whom the Company believed was a holder of a

recognized claim that was organized or domiciled in, or a citizen of, the United States of

America ("U.S. Recognized Creditors") and (b) beneficial owners of the Series A Notes, Series

B Notes and Senior Discount Convertible Notes (the "Noteholders") special procedures to vote

on the Mexican Plan and to make Equity Elections that were in addition to those provided to

creditors in general.

> 25.    Pursuant to the Creditors Meeting Order, on April 18, 2016, the Creditors

Meeting was held and the Debtor's creditors that held general unsecured claims that have been

---

[12]        A copy of this disclosure statement is attached to the Foreign Representative Declaration as Exhibit G.

recognized by the Mexican Court (each, a "Recognized Claim") voted as a single unsecured class of creditors to approve the Mexican Plan, which satisfied the Requisite Creditor Consent. Subsequently, the Mexican Court approved the Mexican Plan by entering the Lifting Order, which lifted the Debtor's suspension of payments.  The Debtor caused notice of the Lifting Order to be published in the *Diario Oficial de la Federación* from July 6 through July 8, 2016.  Under Mexican law, the time for appeal of the Lifting Order has expired, and on August 9, 2016, the Debtor commenced distribution of the Election Shares and Election Cash to those creditors who made a valid Equity Election (as such terms are defined below).

**V.**      *The Terms of the Approved Mexican Plan*

26.      In accordance with the SP Law, the Mexican Plan provides for the payment in full of all holders of Recognized Claims within three years of the Lifting Date (as defined below).[13]  More specifically, pursuant to the Mexican Plan, the Debtor will be required to pay 8,845.7 million pesos[14] on the third anniversary of the lifting of the SP Proceeding (without any interest), or May 16, 2019 (the "Lifting Date"), which will be proportionally paid to all creditors holding a Recognized Claim (the "SP Three-Year Payments", and the right to receive such payment, the "SP Three-Year Payment Rights").  Pursuant to the Mexican Plan, all debts that accrued prior to the SP Commencement Date will be novated, and the only obligation of the Debtor to pay such debts will be to make the SP Three-Year Payments.  See Articles 356, 358, 359 and 360 of SP Law.  In addition, creditors are not permitted to assign their SP Three-Year Payment Rights to third parties.

---

[13]      A certified English translation of the Mexican Plan is attached to the Foreign Representative Declaration as Exhibit F.

[14]      See footnote 8.

27.     The Mexican Plan also provides that holders of the Series A and Senior B Notes will be deemed to have a Recognized Claim equal to the original issue price of such notes, plus accrued original issue discount and accrued and unpaid interest to the SP Commencement Date, and holders of the Discount Notes will receive a recognized unsecured claim equal to the accreted value of such notes plus accrued original issue discount to the SP Commencement Date. See Articles 296, 304, and 322 of SP Law.  Holders of the Notes will receive the same treatment as all holders of Recognized Claims, described above.  Such treatment of holders of the Notes is considered payment in full under the SP Law.  See Articles 296, 304, and 322 of SP Law.

28.     Additionally, each eligible creditor was afforded the option (the "Equity Election") to exchange 69.15% of its SP Three-Year Payment Rights received for (a) shares of the Debtor capital stock (the "Election Shares"), with the number of Election Shares determined based on a formula based on the number of Equity Elections submitted, and (b) cash (the "Election Cash").  The final exchange rate was that for each 1,000,000 pesos of SP Three-Year Payment Rights exchanged, the creditor received 15,303.85 Election Shares and US$2,735.55 in Election Cash.  Pro rata payments were made for amounts less than 1,000,000 pesos, and share numbers were rounded to the nearest whole number of shares and Election Cash was rounded to the nearest cent.  Pursuant to the terms of the Conditional Agreement, the Plan Supporters agreed to make the Equity Election in respect of SP Three-Year Payment Rights to be received for 5,613,518,400 pesos of their Recognized Claims.

29.     In general, in order to make a valid Equity Election, Creditors were required to attend the Creditors Meeting and make the Equity Election prior to the conclusion of the Creditors Meeting.  Under the special procedures established for U.S. Recognized Creditors and Noteholders, such U.S. Recognized Creditors and Noteholders were able to make an equity

01:19096926.4

election by submitting appropriate documentation to Prime Clerk, acting as Tabulation Agent, prior to April 11, 2016 at 4:00 p.m.; over thirty such Equity Elections were received.  Creditors that did not timely make an Equity Election using one of the preceding methods, waived the right to later make an Equity Election.

30.     Creditors that chose to exercise the Equity Election also retained the remaining 30.85% of their SP Three-Year Payment Rights.

31.     In order to issue the shares to creditors that chose to exercise the Equity Election, on April 17, 2015, the required amount of the Debtor's shareholders agreed to the Capital Increase authorizing the distribution of additional shares to be distributed to creditors who exercised the Equity Election.  The new shares authorized under the Capital Increase were deposited with a trustee and distribution to Recognized Creditors who made an Equity Election commenced on August 9, 2016, following such time as the Lifting Order became a final, non-appealable order.

32.     In order to effectuate the Mexican Plan, the Mexican Court authorized the Debtor to seek "approval of this General Payment Agreement [i.e. the Mexican Plan] under the rules of Chapter 15 of the Bankruptcy Code of the United States of America."  Mexican Plan at Clause 8.

**VI.     *The Lifting Order***

33.     The Lifting Order was entered on May 16, 2016 by the Mexican Court. The Lifting Order approved the terms of the Mexican Plan and authorized the Debtor to consummate all transactions contemplated by the Plan, including, without limitation, any transactions required to give effect to the Equity Elections.

01:19096926.4

34.     The Lifting Order discharges the Debtor's obligations to pay the Recognized Claims (and provides for an injunction against creditors attempting to collect upon such discharged Recognized Claims) but also simultaneously obligates the Debtor to make the SP Three-Year Payments to the holders of Recognized Claims.  See Articles 356, 358, 359 and 360 of SP Law.  Stated otherwise, while the Debtor was discharged of one debt (the obligation to pay the Recognized Claims), it also incurred another debt (the obligation to pay the SP Three-Year Payments) under the Mexican Plan.  Under the SP Law, if the Debtor fails to pay the SP Three-Year Payments in full within three years from the Lifting Date, not only will creditors have the right to collect on the SP Three-Year Payments owed, but the Debtor will also be forced into liquidation.  See Articles 369-372 of SP Law.  Pursuant to both the Lifting Order and the Mexican Plan, an injunction was issued preventing any creditor from attempting to collect on account of (a) the SP Three-Year Payments before such payments are due, or (b) their Recognized Claims.

35.     Significantly, the Lifting Order authorizes the Petitioner to effectuate the Mexican Plan, including obtaining "validation of this judgment abroad as referenced in Clauses Four and Eight of the [Mexican Plan]."  Lifting Order at p. 83 of 87, see also Id. at p. 84 of 87, clause 4.

**VII.**     *Appointment Resolution*

36.     On August 3, 2016, the Mexican Court issued a resolution formally appointing the Petitioner to serve as a foreign representative of the Debtor in any case to be commenced for the Debtor under chapter 15 of the Bankruptcy Code (the "Appointment Resolution").[15]

---

[15]     A certified English translation of the Appointment Resolution is attached to the Foreign Representative Declaration as Exhibit I.

01:19096926.4

## VIII.    *Commencement of the Chapter 15 Case*

37.    Now that the Lifting Order has been entered by the Mexican Court, the three-day appeals period with respect to the Mexican Plan having expired,[16] and the Petitioner has been appointed to serve as the Foreign Representative in the Chapter 15 Case, the Foreign Representative commenced this chapter 15 case to seek recognition of the SP Proceeding and enforcement of the provisions of the Lifting Order in the United States, to ensure, among other things, that the Mexican Plan and the Lifting Order's provisions are effective with respect to the Debtor's U.S. assets and creditors.

## RELIEF REQUESTED

38.    The Foreign Representative, seeks entry of an order, substantially in the form attached hereto as Exhibit A, granting the following relief:

(a)    Pursuant to section 1517 of the Bankruptcy Code, recognizing the SP Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code;

(b)    automatic relief as of right upon recognition of a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code, including, but not limited to, the automatic stay provided for by section 362 of the Bankruptcy Code;

(c)    recognizing the Petitioner as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the SP Proceeding;

(d)    giving full force and effect to the Lifting Order (as such order may be subsequently amended, extended or modified by the Mexican Court) and the Mexican Plan pursuant to sections 105, 1501, 1507, 1521 and 1525 of the Bankruptcy Code;

---

[16]    Dissenting creditors and the *Sindico* have three months after the publication of the approval of the Mexican Plan to file a separate lawsuit for the Mexican Plan to be declared invalid or null on certain limited grounds, including that fraudulent transfers or fraudulent votes occurred, that creditors were not sufficiently represented by counsel, that proper publication of the meeting of creditors was not complied with or that any other technical requirement was not met by AHMSA.  As the Debtor caused the Lifting Order to be published from July 6-8, 2016, this three-month period will expire on October 8, 2016.

(e)     as provided in the Mexican Plan as approved by the Lifting Order, permanently enjoining all parties from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property (with respect to claims discharged by the Lifting Order); and

(f)     awarding the Foreign Representative such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

**I.     *This Chapter 15 Case Concerns a Foreign Proceeding.***

39.     Section 101(23) of the Bankruptcy Code provides as follows:

The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).   A proceeding is "collective" in nature if it is "one that considers the rights and obligations of all creditors" as opposed to a proceeding brought for the benefit of a single party, such as a "single secured creditor." In re Betcorp Ltd., 400 B.R. 266, 281 (Bankr. D. Nev. 2009); In re Ir. Bank Resolution Corp., 2014 Bankr. LEXIS 1990, *44 (Bankr. D. Del. Apr. 30, 2014); see also Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.), 480 B.R. 129, 136-137 (S.D.N.Y. 2012) ("A collective proceeding is designed to provide equitable treatment to creditors, by treating similarly situated creditors in the same way, and to maximize the value of the debtor's assets for the benefit of all creditors").   Other factors in determining whether a proceeding is collective include "adequate notice to creditors under applicable foreign law, provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the proceeding."   In re Ashapura Minechem Ltd., 480 B.R. at 137.

01:19096926.4

- 19 -

40.     The SP Proceeding is "collective" in nature because it is a restructuring case in which all stakeholders of the Debtor are permitted to participate and the Mexican Plan establishes a framework to resolve all of the Debtor's pre-filing liabilities.  See SP Expert Declaration at ¶ 9.  The Southern District of New York recognized that this specific SP Proceeding "resembles an American Chapter 11 Reorganization," and is a proceeding "intended to relieve debtors from the immediate pressure of creditor's claims and suits in that they can reorganize their affairs, restructure their debts, and ultimately pay them."  Ecoban Fin. Ltd. v. Groupo Acerero del Norte, 108 F. Supp. 2d 349, 350-51 (S.D.N.Y 2000), aff'd sub nom. Ecoban Fin. Ltd. v. Altos Hornos de Mexico, S.A. de C.V., 2 F. App'x 80 (2d Cir. 2001) ("Ecoban").

41.     Additionally, adequate notice was given to creditors pursuant to the terms of the SP Law (and also by voluntary supplemental means), the Mexican Plan proposes to distribute the Debtor's assets in accordance with the priorities of the SP Law, and creditors have had and have the opportunity to be heard before the Mexican Court and seek appeals of decisions of the Mexican Court in accordance with Mexican law.  See SP Expert Declaration at ¶ 17 (describing the notice requirements of the SP Law).  Furthermore, the SP Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code because it is a judicial proceeding pending in Mexico under the SP Law and the assets and affairs of the Debtor are subject to the control and supervision of the Mexican Court for the purpose of restructuring.

## II.     *This Chapter 15 Case Has Been Commenced by a Duly Authorized Foreign Representative.*

42.     The Foreign Representative is duly authorized to serve in this capacity in this chapter 15 case.  The term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:

a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

43.     This chapter 15 case was commenced by the Foreign Representative, a natural person who was appointed by the Mexican Court to serve as the Foreign Representative pursuant to the Appointment Resolution.  Further, the terms of the Mexican Plan specifically authorize the Debtor to seek chapter 15 relief enforcing the Mexican Plan in the United States. See Mexican Plan ¶ 8, Exhibit F to the Foreign Representative Declaration (". . . the [Debtor] may carry out the necessary cancellation procedures it deems appropriate, this General Payment Agreement expressing the permission and consent do to so by the Creditors, including, if the company deems it advisable, ***approval of this [Mexican Plan] under the rules of Chapter 15 of the Bankruptcy Code of the United States of America***.") (emphasis added).

44.     In the SP Proceeding, the Foreign Representative has served as the "*síndico*" who oversees the Debtor's activities.  Pursuant to the SP Law, in order to approve of the Foreign Representative's appointment as *síndico*, the Mexican Court was required to find that the Foreign Representative is an impartial third party.

45.     The role and duties of a *síndico* in a case under the SP Law are primarily to oversee the acts of the debtor company to ensure that its assets are being used in a manner beneficial to the estate.  A *síndico* is required to file a quarterly report with the court which informs the court and creditors of the debtor company's activities.  See SP Expert Declaration at ¶ 19.

01:19096926.4

46.     The Foreign Representative has significant experience serving as a *síndico* in cases under the SP Law, having been appointed as the first *síndico* in Mexico in 1987, and having served as the *síndico* in more than 2,000 cases under the SP Law.

47.     In his role as the *síndico* in the SP Proceeding, the Foreign Representative has played a critical role in the restructuring process.  At the Creditors Meeting, the Foreign Representative gave his opinion that creditors should vote in support of the Mexican Plan and tallied the votes cast at the Creditors Meeting.  The Foreign Representative (in his role as the *síndico*) was required to sign the Mexican Plan in front of the Mexican Court along with the chairman of the board of the Debtor.  The Foreign Representative's role as *síndico* will continue on a limited basis until the Debtor makes the SP Three-Year Payments in full.  Specifically, the Foreign Representative will be responsible for (a) monitoring the Debtor, (b) ensuring that the Debtor performs all actions required under the Mexican Plan, and (c) denouncing the Debtor to the Mexican Court if he becomes aware of any inappropriate activity on the part of the Debtor.

48.     Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, as he has been "authorized" to act as a representative of the SP Proceeding by the Mexican Court.  See 11 U.S.C. § 101(24).

## III.     *The Chapter 15 Case Has Been Properly Commenced.*

49.     This chapter 15 case was duly and properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code by the filing of the Chapter 15 Petition and this Verified Petition accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including:  (a) a certified copy of the SP Commencement Order, the Lifting Order and the Appointment Resolution; (b) lists pursuant to Bankruptcy Rule 1007(a)(4)(B) containing (i) the

01:19096926.4

names and addresses of all persons or bodies authorized to administer foreign proceedings of the

Debtor, (ii) all entities against whom provisional relief is being sought under section 1519 of the

Bankruptcy Code, and (iii) all parties to litigation pending in the United States to which the

Debtor is a party as of the Petition Date; (c) a corporate ownership statement containing the

information described in Bankruptcy Rule 7007.1; and (d) a statement identifying all foreign

proceedings with respect to the Debtor that are known to the Foreign Representative.

50.     Having filed the above-referenced documents and because this Court is

entitled to presume the authenticity of such documents filed in connection with the Chapter 15

Petition and Verified Petition under section 1516(b) of the Bankruptcy Code, the requirements of

section 1515 of the Bankruptcy Code have been satisfied.

**IV.     *The Court has Jurisdiction to Recognize the SP Proceeding and Grant the Relief Requested.***

51.     Pursuant to sections 157(b)(2)(P) and 1334 of title 28 of the United States

Code and the Amended Standing Order of Reference from the United States District Court for

the District of Delaware dated as of February 29, 2012, the Court has jurisdiction to hear and

determine chapter 15 cases.

52.     Venue is also proper in this District.  Section 1410 of title 28 of the United

States Code instructs that venue of a case brought pursuant to chapter 15 of the Bankruptcy Code

is proper in the district "in which the debtor has its principal place of business or principal assets

in the United States."  28 U.S.C. § 1410(a).

53.     Specifically, venue is appropriate in this District because the Debtor's

principal assets in the United States are located in Delaware.  The Debtor's primary assets in the

United States include approximately $20 million in cash which is located in a local bank account

in the Debtor's name in Delaware, and its 100% equity ownership of (i) AHMSA International, a

Delaware corporation, through which the Debtor conducts substantially all of its operations in the United States and (ii) Mexicans & Americans Trading Together, Inc. ("MATT"), also a Delaware corporation.  As described in more detail in the Memorandum of Law, pursuant to applicable Delaware law, the stock in AHMSA International and MATT are considered to be located in Delaware for purposes of venue.  See 8 DEL. C. § 169 ("For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State."); see also In re Global Ocean Carriers Ltd., 251 B.R. 31, 38 (Bankr. D. Del 2000) (holding that debtor that owned the capital stock of a Delaware corporation owned property in Delaware).  The aggregate book value of the stock of AHMSA International and MATT is approximately $11,000,000 as of July 31st, 2016.

54.    The majority of the Debtor's assets in the United States are located in this District.  The Foreign Representative submits that venue in this District is proper pursuant to section 1410 of title 28 of the United States Code.

**V.    *The SP Proceeding Should Be Recognized as a Foreign Main Proceeding.***

55.    Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding for which recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests.  Section 1516(c) of the Bankruptcy Code further provides that, in the absence of evidence to the contrary, a debtor's registered offices are presumed to be the center of the debtor's main interests.  The concept of "center of main interests" has been compared by courts to the concept of a debtor's "principal place of business."  Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 138 n.10 (2d Cir. 2013); In re ABC Learning Centres Ltd., 445 B.R. 318, 333

(Bankr. D. Del. 2010); RHTC Liquidating Co. v. Union Pac. R.R. (In re RHTC Liquidating Co.), 424 B.R. 714, 723 n.8 (Bankr. W.D. Pa. 2010).

56.     As set forth in the Foreign Representative Declaration, Mexico is the center of the Debtor's main interests.  A review of the following non-exhaustive list of corporate functions supports the Mexican Court's finding that the Debtor's center of main interests is located in Monclova, Coahuila, Mexico:

(a)     The location of the registered office and corporate headquarters for the Debtor is in Monclova;

(b)     All key strategic and operating decisions for the Debtor and its operating subsidiaries are made at the Debtor's main office in Monclova;

(c)     Virtually all key senior management are located in Monclova, including the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, the Director of Sales and Marketing, the Director of Financial Planning & Projects, Director of Personnel, and other principal officers of the Debtor;

(d)     All key and strategic corporate functions are performed in Monclova, including, but not limited to, treasury, corporate finance and accounting, communications and investor relations, human resources, information technology and new business development;

(e)     All books, records and key documents (including contracts, leases, insurance and other key corporate documents) are negotiated and maintained in Mexico;

(f)     Payroll functions, accounts receivable and accounts payable for the Debtor are managed from Monclova;

(g)     The Debtor's stock was registered and publicly traded on the Mexican Stock Exchange, but trading of the stock is currently suspended due to the pendency of the SP Proceeding;

(h)     The majority of the directors and officers of the Debtor are Mexican residents, and board meetings are typically held in Mexico; and

(i)     The majority of the Debtor's shareholders (including GAN) are located in Mexico.

01:19096926.4

Based upon the foregoing, the "nerve center" of the Debtor is in Mexico.[17]

57.    In addition, recognizing the SP Proceeding as a foreign main proceeding would not be manifestly contrary to the public policy of the United States.  Rather, granting such recognition is entirely consistent with the United States public policy of respecting foreign proceedings as codified in chapter 15 of the Bankruptcy Code.  See ABC Learning Centres., 445 B.R. at 334-35.  Insolvency proceedings under the SP Law in Mexico are similar to cases under chapter 11 of the Bankruptcy Code in that the SP Law provides for a centralized process to assert and resolve claims against the Debtor's estate under judicial supervision, maximizing distributions to stakeholders. See SP Expert Declaration at ¶¶ 9, 11-14.   In fact, courts have found that the SP Law "does not violate fundamental principles of procedural fairness, or the public policy of New York or of the United States," and accordingly held that "comity should be extended" to this very same SP Proceeding.  Ecoban, 108 F. Supp.2d at 352.

58.    Finally, chapter 15 expressly applies where "assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding."  11 U.S.C. § 1501(b)(1).  In light of the Mexican Court's appointment of the Foreign Represenive and authorization of the commencement of the Chapter 15 Case, the Court's assistance in connection with the SP Proceeding is essential.

59.    Based on the foregoing, the Foreign Representative respectfully submits that the requested relief is warranted and that this Court should enter an order recognizing the SP Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

---

[17]    An entity is considered to have its principal place of business where its nerve center is located.  Hertz Corp. v. Friend, 130 S.Ct. 1181, 1186 (2010).

**VI.**    *Enforcement of the Lifting Order.*

60.    In addition to recognition as a foreign main proceeding, the Foreign Representative seeks enforcement of the Lifting Order in the United States.  As recognized by the Mexican Court in the Lifting Order, the SP Proceeding should be recognized pursuant to chapter 15 of the Bankruptcy Code in order to give effect to the Lifting Order and the Plan in the United States.  As discussed further in the Memorandum of Law, the Foreign Representative submits that the relief requested herein is authorized pursuant to section 1507(b) of the Bankruptcy Code because the enforcement of the Lifting Order (and in connection, the recognition of the Mexican Plan) is consistent with principles of comity.

61.    Furthermore, section 1525(a) of the Bankruptcy Code provides, "consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative."  11 U.S.C. § 1525(a).  The Foreign Representative believes that enforcement of the Lifting Order is necessary to give more complete effect to such order in the United States.  Specifically, as discussed above, the Recognized Claims will not be discharged until the Debtor makes the SP Three-Year Payments in full.  In order to prevent the Debtor's creditors from foreclosing on its assets on account of the Recognized Claims, the Lifting Order provides for an injunction against such collection attempts until the SP Three-Year Payments are due.  However, U.S.-based creditors may challenge the extraterritorial application of that injunction to collection actions against the Debtor's assets which are located outside of Mexico.

62.    Accordingly, to the extent relevant actions are not otherwise stayed under sections 1520 and 362 of the Bankruptcy Code and to ensure fairness and equality of treatment for all of the Debtor's creditors, the Foreign Representative respectfully requests that this Court

01:19096926.4

extend the injunction provided in the Lifting Order to the Debtor's assets in the United States with respect to claims discharged by the Lifting Order.  Such an extension of the Lifting Order injunction will prohibit any parties from commencing or pursuing actions and/or claims in the United States against the Debtor or its property.  This prohibition will aid the Mexican Court and the Debtor in these final stages of this complex restructuring and ensure that all the Debtor's creditors are prevented from collecting on their Recognized Claims while the Debtor is in the process of making the SP Three-Year Payments.  Pursuant to the terms of the Lifting Order and the Mexican Plan, despite the releases of Recognized Claims and the injunction against collecting upon such discharged claims, the Debtor will still be obligated to make the SP Three-Year Payments to the holders of Recognized Claims.  It would defy logic for the Debtor to be obligated to make the SP Three-Year Payments to holders of Recognized Claims while simultaneously allowing such holders to attempt to collect upon the Recognized Claims themselves, which would provide an inequitable windfall to certain of the Debtor's creditors. The requested relief will help facilitate the fair and efficient administration of the SP Proceeding, which aims to protect all parties in interest and to require that all the Debtor's creditors be bound by the terms of the Mexican Plan, as approved by the Lifting Order.

63.     Thus, in addition to the reasons set forth above, this Court should enter the Proposed Order pursuant to sections 1501 and 1525 of the Bankruptcy Code, and under well-established principles of international comity, to assist the Mexican Court with this final stage of the restructuring of the Debtor, and to prevent interference with the claims discharge process ordered by the Mexican Court.

## **NOTICE**

64.     The Foreign Representative will notify all creditors of the filing of the Verified Petition in the form and manner set forth in the *Motion for Order Specifying the Form*

01:19096926.4

- 28 -

*and Manner of Service of Notice*, filed concurrently herewith.  The Foreign Representative submits that such proposed notice and service constitutes reasonable and proper notice under the circumstances, and that no other or further notice is necessary or appropriate.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>:, (a) recognizing the SP Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code; (b) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the SP Proceeding; (c) giving full force and effect in the United States to the Lifting Order (including, but not limited to, the injunction and releases provided for therein), including any extensions or amendments thereof authorized by the Mexican Court; (d) as provided in the Mexican Plan, as approved by the Lifting Order, permanently enjoining all persons from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property with respect to those claims discharged by the Lifting Order; (e) giving full force and effect in the United States to the Lifting Order, including any extensions or amendments thereof authorized by the Mexican Court; and (f) granting such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
   August 16, 2016

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Matthew B. Lunn*
Matthew B. Lunn (No. 4119)
Maris J. Kandestin (No. 5294)
Ian J. Bambrick (No. 5455)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to the Foreign Representative*

## VERIFICATION OF PETITION

Francisco Javier Gaxiola Fernández, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am the *síndico* appointed for Altos Hornos de México, S.A.B. de C.V. and am the authorized foreign representative for the Debtor. As such, I have full authority to verify the foregoing Petition on behalf of the Debtor.

I have read the foregoing Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 16, 2016

Altos Hornos de México, S.A.B. de C.V.
By: Francisco Javier Gaxiola Fernández
Title: *Síndico* in SP Proceeding and Authorized
Foreign Representative

01:19096926.2

- 31 -

# **EXHIBIT A**

## **Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
In re                                          :    Chapter 15
                                               :
Altos Hornos de México, S.A.B. de C.V.[1],     :    Case No. 16-11890 (    )
                                               :
        Debtor in a Foreign Proceeding.        :
-------------------------------------------------------x
```

## ORDER GRANTING (I) RECOGNITION OF
## FOREIGN MAIN PROCEEDING; (II) ENFORCEMENT OF
## LIFTING ORDER; AND (III) CERTAIN RELATED RELIEF

This matter coming before the Court on the chapter 15 petition and the *Verified Petition for (I) Recognition of Foreign Main Proceeding; (II) Enforcement of Lifting Order; and (III) Certain Related Relief* (together, the "Petition")[2] of petitioner, Francisco Javier Gaxiola Fernández, in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the Debtor, in the proceeding (the "SP Proceeding") under Mexico's Suspension of Payments law (the "SP Law"),[3] pending before the First Civil Court of First Instance for the Judicial District of Monclova, Coahuila, Mexico (the "Mexican Court"); and the Court having reviewed the Petition, the Memorandum of Law, the Foreign Representative Declaration and the SP Expert Declaration, and having considered the statements of counsel with respect to the Petition at a hearing before the Court (the "Hearing"); and appropriate and timely notice of the filing of the Petition and the Hearing having been given; and no other or further notice being necessary or required; and the Court having determined that the legal and factual

---

[1]     The last four digits of the Debtor's U.S. and Mexican taxpayer identification numbers are 0706 and 6U10, respectively.  The Debtor's executive headquarters are located at Prolongación Juarez s/n, Col. La Loma, Monclova, Coahuila, Mexico, 25770.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Petition.

[3]     After the commencement of the SP Proceeding, the SP Law was superseded by the Ley de Concurso Mercantiles (the "Concurso").  Pursuant to applicable Mexican law, the SP Proceeding continues under the SP Law notwithstanding the enactment of the Concurso.  See Transitional Article 5 of Concurso.

bases set forth in the Petition, the Memorandum of Law, the Foreign Representative Declaration, the SP Expert Declaration and all other pleadings and proceedings in this case establish just cause to grant the relief ordered herein, and after due deliberation therefore,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

C.      The Foreign Representative is the duly appointed "foreign representative" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code.

D.      This chapter 15 case was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

E.      The Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Rule 2002(q) of the Federal Rules of Bankruptcy Procedure.

F.      The SP Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

G.      The SP Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

H.      Mexico is the center of main interests of the Debtor, and accordingly the SP Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

I.      Recognizing the SP Proceeding would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code.

J.      The Foreign Representative is entitled to all the automatic relief available pursuant to section 1520 of the Bankruptcy Code without limitation.

K.      All creditors and other parties in interest are sufficiently protected in the grant of the relief ordered hereby in compliance with section 1522(a) of the Bankruptcy Code.

L.      The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to sections 105(a), 1517, 1520, 1521 and 1522 of the Bankruptcy Code, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting that relief.

**NOW, THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS**:

1.      The Petition is granted.

2.      The SP Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

01:19096926.4

- 3 -

3.      The Petitioner is the duly appointed foreign representative of the Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtor in this chapter 15 case.

4.      The Lifting Order, including any extensions, amendments or modifications thereto, is hereby enforced on a final basis and given full force and effect in the United States and is binding on all persons subject to this Court's jurisdiction pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

5.      All relief afforded foreign main proceedings pursuant to section 1520 of the Bankruptcy Code is hereby granted to the SP Proceeding.

6.      Sections 361 and 362 of the Bankruptcy Code shall hereby apply with respect to the Debtor and the property of the Debtor that is within the territorial jurisdiction of the United States.

7.      Pursuant to sections 1520 and 1521 of the Bankruptcy Code, the SP Proceeding, the Mexican Plan and the Lifting Order and the transactions consummated or to be consummated thereunder, shall be granted comity and given full force and effect in the United States to the same extent that they are given effect in Mexico, and each is binding on all creditors of the Debtor and any of their successor or assigns.

8.      Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to the Debtor or the Foreign Representative by this Court pursuant to section 1519(a) of the Bankruptcy Code shall be extended and that certain Order Granting Provisional Relief shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

9.      All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and its expressly authorized representatives and

agents, are hereby enjoined from, with respect to any claims (as that term is defined in section

101(5) of the Bankruptcy Code) that were discharged by the Lifting Order:

<ul style="list-style:none">
<li>a.     execution against any of the Debtor's assets;</li>
<li>b.     the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, which in either case is in any way related to, or would interfere with, the administration of the Debtor's estate in the SP Proceeding or the solicitation, implementation or consummation of the transactions contemplated by the Lifting Order and/or the Mexican Plan, including without limitation any and all unpaid judgments, settlements or otherwise against the Debtor in the United States;</li>
<li>c.     taking or continuing any act to create, perfect or enforce a lien or other security interest, set-off or other claim against the Debtor or any of its property;</li>
<li>d.     transferring, relinquishing or disposing of any property of the Debtor to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative; and</li>
<li>e.     commencing or continuing an individual action or proceeding concerning the Debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);</li>
</ul>

provided, however, in each case, such injunction shall be effective solely within the territorial

jurisdiction of the United States.

10.     All entities are permanently enjoined from taking any action within the

territorial jurisdiction of the United States that is in contravention of or that is inconsistent with

the Lifting Order and/or the Mexican Plan.

11.     Notwithstanding anything to the contrary contained herein, this Order

shall not be construed as (a) enjoining the police or regulatory act of a governmental unit,

including a criminal action or proceeding, or (b) staying the exercise of any rights that are not

subject to stay arising under section 362(a).

12.     The Foreign Representative is hereby authorized to apply to this Court to examine witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations or liabilities of the Debtor, as such information is required in the SP Proceeding under the law of the United States.

13.     The Foreign Representative, the Debtor and/or each of their successors, agents, representatives, advisors or counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Foreign Representative is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

15.     A copy of this Order, conformed to be true and correct, shall be served, within three business days of entry of this Order, by facsimile, electronic mail or overnight express delivery, upon all persons or bodies authorized to administer foreign proceedings of the Debtor, all entities against whom provisional relief was granted under section 1519 of the Bankruptcy Code, all parties to litigation pending in the United States to which the Debtor was a party at the time of the filing of the Petition, the United States Trustee and such other entities as the Court may direct.

16.     Such service shall be good and sufficient service and adequate notice for present purposes.

01:19096926.4

- 6 -

17.     This Court shall retain jurisdiction with respect to:  (a) the enforcement, amendment or modification of this Order; (b) any requests for additional relief or any adversary proceeding brought in and through this chapter 15 case; and (c) any request by an entity for relief from the provisions of this Order, for cause shown.

Dated:  Wilmington, Delaware
        _____, 2016


_____
UNITED STATES BANKRUPTCY JUDGE

01:19096926.4