**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------  x
In re                                                         :    Chapter 15
                                                              :
Altos Hornos de México, S.A.B. de C.V.[1],                    :    Case No.  16-11890 (____)
                                                              :
        Debtor in a Foreign Proceeding.                       :
------------------------------------------------------------  x
```

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION FOR
(I) RECOGNITION OF FOREIGN MAIN PROCEEDING; (II) ENFORCEMENT
OF LIFTING ORDER; AND (III) CERTAIN RELATED RELIEF**

---

[1]  The last four digits of the Debtor's U.S. and Mexican taxpayer identification numbers are 0706 and 6U10, respectively.  The Debtor's executive headquarters are located at Prolongación Juarez s/n, Col. La Loma, Monclova, Coahuila, Mexico, 25770.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES** ....................................................................................ii

**PRELIMINARY STATEMENT** ..............................................................................2

**FACTUAL BACKGROUND**......................................................................................3

**ARGUMENT**...................................................................................................................3

    **I.**    **The SP Proceeding Is Entitled to Recognition As a Foreign Main Proceeding.** .............................................................................3

        **a.**    **This Case Is Proper Under Chapter 15**....................................3

            **(i)**    **Venue Is Proper in this District** ....................................4

            **(ii)**    **The SP Proceeding Is a "Foreign Proceeding."**...........5

            **(iii)**    **The Foreign Representative Is a Proper "Foreign Representative."** ..............................................................8

            **(iv)**    **The Foreign Representative Filed Proper Documentation to Commence this Chapter 15 Case.**....................................9

            **(v)**    **The Verified Petition Is Consistent With the Purpose of Chapter 15.** ..............................................................10

        **b.**    **The SP Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code.** ..................................................11

        **c.**    **The Foreign Representative Is Entitled to an Order Granting Recognition of the SP Proceeding as a Foreign Main Proceeding**.......13

    **II.**    **Recognition of the Lifting Order and Enforcement of the Mexican Plan Promotes the Goals of Chapter 15.** .............................................17

        **a.**    **Principles of Comity Embodied in Chapter 15 Strongly Favor Recognition of the Lifting Order and Enforcement of the Mexican Plan.**..................................................................18

        **b.**    **Enforcement of the Lifting Order Is Authorized and Warranted Under Chapter 15.** ............................................21

        **c.**    **The Requested Relief Is Not Manifestly Contrary to the Public Policy of the United States.** .....................................28

**CONCLUSION** ..........................................................................................................29

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

In re ABC Learning Ctrs. Ltd.,
    445 B.R. 318 (Bankr. D. Del. 2010) ....................................................................................6

Airline Pilots Ass'n, Int'l v. Shugrue,
    502 U.S. 808 (1991)........................................................................................................14

In re Ashapura Minechem Ltd.,
    480 B.R. 129 (S.D.N.Y. 2012)........................................................................................13

In re Atlas Shipping A/S,
    404 B.R. 726 (Bankr. S.D.N.Y. 2009) ...........................................................................19

Bavelis v. Doukas (In re Bavelis),
    453 B.R. 832 (Bankr. S.D. Ohio 2011)............................................................................4

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007) .......................................................................9, 11

In re Betcorp Ltd.,
    400 B.R. 266 (Bankr. D. Nev. 2009) .........................................................................6, 12

In re British Am. Ins. Co.,
    425 B.R. 884 (Bankr. S.D. Fla. 2010) .........................................................................6, 7

In re British Am. Isle of Venice (BVI), Ltd.,
    441 B.R. 713 (Bankr. S.D. Fla. 2010) .......................................................................7, 14

Chen v. Ernst & Young Inc. (In re Nortel Networks Corp.),
    No. 10-0314, 2013 U.S. Dist. LEXIS 162887 (D. Del. Nov. 15, 2013)..........................27

Cornfeld v. Investors Overseas Servs., Ltd.,
    471 F. Supp. 1255 (S.D.N.Y. 1979).................................................................................14

Cunard S.S. Co. v. Salen Reefer Services AB,
    773 F.2d 452 (2d Cir. 1985).......................................................................................19, 22

Ecoban Fin. Ltd. v. Groupo Acerero del Norte,
    108 F. Supp. 2d 349 (S.D.N.Y 2000)....................................................................7, 14, 15

In re Ephedra Prods. Liab. Litig.,
    349 B.R. 333 (S.D.N.Y. 2006)........................................................................................28

In re Fairfield Sentry Ltd.,
    484 B.R. 615 (Bankr. S.D.N.Y. 2013) ...........................................................................19

Frank v. Neufeld (In re Neufeld),
    No. 12-02177, 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) ....................4

In re Global Ocean Carriers Ltd.,
    251 B.R. 31 (Bankr. D. Del 2000) ...................................................................................5

Hilton v. Guyot,
    159 U.S. 113 (1895) .......................................................................................................19

In re Ionosphere Clubs, Inc.,
    922 F.2d 984 (2d Cir. 1990) ..........................................................................................14

In re Ir. Bank Resolution Corp. (In Special Liquidation),
    No. 13-12159, 2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) .......................11

Jaffe v. Samsung Elecs. Co.,
    737 F.3d 14 (4th Cir. 2013) ...........................................................................................27

JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,
    412 F.3d 418 (2d Cir. 2005).............................................................................................15

In re Mid Atl. Retail Grp., Inc.,
    No. 07-81745, 2008 Bankr. LEXIS 790 (Bankr. M.D.N.C. Jan. 4, 2008) .........................4

In re Millenium Global Emerging Credit Master Fund Ltd.,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011) ..............................................................................12

In re Millennium Global Emerging Credit Master Fund Ltd.,
    474 B.R. 88 (S.D.N.Y. 2012)..........................................................................................12

In re MMG LLC,
    256 B.R. 544 (Bankr. S.D.N.Y. 2000) .......................................................................23, 24

Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),
    714 F.3d 127 (3d Cir. 2013)...........................................................................................11

NextG Networks of N.Y., Inc. v. City of N.Y.,
    No. 03-9672, 2006 WL 538189 (S.D.N.Y. Mar. 6, 2006)...............................................23

Rico Corp. v. Arundotech, LLC (In re Arundotech, LLC),
    BAP No. 08-1282, 2009 Bankr. LEXIS 1705 (B.A.P. 9th Cir. May 4, 2009) .................14

In re Shelton,
    No. 01-20655, 2001 Bankr. LEXIS 2213 (Bankr. D. Idaho Oct. 12, 2001) ......................4

Stolt-Nielsen, S.A. v. United States,
    442 F.3d 177 (3d Cir. 2006)..........................................................................................23

Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,
    825 F.2d 709 (2d Cir. 1987)...............................................................................18, 22

**FEDERAL STATUTES**

8 DEL. C. § 169 ...............................................................................................................5

11 U.S.C. § 101(24).....................................................................................................5, 8

11 U.S.C. § 105.............................................................................................................21

11 U.S.C. § 1501.......................................................................................3, 10, 17, 19, 21

11 U.S.C. § 1504...........................................................................................................20

11 U.S.C. § 1506...........................................................................................................28

11 U.S.C. § 1507...........................................................................................................21

11 U.S.C. § 1516(c) .......................................................................................................11

11 U.S.C. § 1517.....................................................................................................11, 13

11 U.S.C. § 1521.................................................................................................21, 22, 23

11 U.S.C. § 1522...........................................................................................................26

11 U.S.C. § 1525...........................................................................................................20

11 U.S.C. § 1527...........................................................................................................20

28 U.S.C. § 1410.........................................................................................................3, 4

**OTHER AUTHORTIES**

House Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005) ....................................21, 27

J. L. Westbrook, Chapter 15 and Discharge, 13 Am. Bankr. Inst. L. Rev. 503, 515 (2005).........20

J. L. Westbrook, Multinational Enterprises in General Default: Chapter 15, the ALI Principles,
and the EU Insolvency Regulation, 76 Am. Bankr. L.J. 1, 4 (2002)............................................20

Principles of Cooperation Among the NAFTA Countries (2003)................................................20

Francisco Javier Gaxiola Fernández is the duly appointed, proposed foreign representative of Altos Hornos de México, S.A.B. de C.V. (the "Petitioner" or the "Foreign Representative") of the above-captioned debtor (the "Debtor" or "AHMSA") in a proceeding (the "SP Proceeding") under Mexico's Bankruptcy and Suspension of Payments law (the "SP Law"),[2] pending before the First Civil Court of First Instance for the Judicial District of Monclova, Coahuila, Mexico (the "Mexican Court").[3] On the date hereof, the Foreign Representative commenced this chapter 15 case (the "Chapter 15 Case") and filed a verified petition (the "Verified Petition"), seeking entry of a final order (the "Recognition Order") after notice and a hearing (a) recognizing the SP Proceeding as a foreign main proceeding under section 1517 of title 11 of the United States Code (the "Bankruptcy Code"), (b) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the SP Proceeding; (c) giving full force and effect in the United States to the order of the Mexican Court approving the Mexican Plan (defined herein) (the "Lifting Order"), including any extensions or amendments thereof authorized by the Mexican Court; (d) as provided in the Mexican Plan, as approved by the Lifting Order, permanently enjoining all persons from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property; and (e) granting such other and further relief as this Court deems just and proper. The Foreign Representative respectfully submits this Memorandum of Law in support of the Verified Petition.

---

[2]   After the commencement of the SP Proceeding, the SP Law was superseded by the *Ley de Concurso Mercantiles* (the "Concurso"). Pursuant to applicable Mexican law, the SP Proceeding continues under the SP Law notwithstanding the enactment of the Concurso. See Transitional Article 5 of Concurso.

[3]   All capitalized terms used but not defined herein shall have the meanings given to them in the Verified Petition.

## PRELIMINARY STATEMENT

1.        The Debtor is one of the largest producers of integrated steel, steam coal, and plate and tin products in Mexico, and began encountering operational and financial difficulties in the late 1990s due to declining steel prices.  The SP Proceeding was commenced in order to provide the Debtor with the protection needed to restructure its operations and, through implementation of a general payment agreement (as approved, the "Mexican Plan") under the SP Law, to enforce the terms of a consensual restructuring negotiated between the Debtor and its creditors.  The Mexican Plan received the overwhelming approval of creditors and was approved by the Mexican Court on May 16, 2016.

2.        Chapter 15 authorizes this Court to, among other things, (a) recognize a foreign proceeding upon a foreign representative's proper commencement of a case under chapter 15 and (b) once recognition is granted, provide further assistance in the United States to such foreign representative with respect to the foreign proceeding consistent with longstanding principles of comity and the statutory purposes of chapter 15 to facilitate and foster cooperation in cross-border insolvency proceedings by, among other things, enforcing in the United States orders entered in the foreign proceeding.

3.        As set forth below, the SP Proceeding is entitled to recognition and the relief requested by the Foreign Representative under chapter 15.  First, the Verified Petition satisfies all of the requirements set forth in section 1515, 1517 and 1519 of the Bankruptcy Code, as the SP Proceeding is before the Mexican Court involving a company incorporated, headquartered and primarily operated in Mexico, and the Foreign Representative is duly authorized to seek recognition of the SP Proceeding and enforcement of the Mexican Plan and the Lifting Order in the United States under chapter 15.  Second, enforcement of the Mexican Plan and the Lifting Order in the United States following recognition of the SP Proceeding is

2

consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15.  Granting the relief sought in the Verified Petition will best ensure (a) the efficient administration of the SP Proceeding, (b) the completion of the Debtor's restructuring of its debts, and (c) the fair and equal treatment of the Debtor's Mexican and U.S. creditors.  Simply put, absent the relief requested by the Foreign Representative in this Chapter 15 Case, the effects of the SP Proceeding will be undermined, the Debtor's restructuring efforts will be jeopardized, and the Debtor and its creditors may suffer irreparable harm.

## FACTUAL BACKGROUND

4.      For a more complete description of the Debtor's business, corporate organization, debt structure, and circumstances leading to the SP Proceeding and this Chapter 15 Case, the Court is respectfully referred to (a) the Verified Petition and (b) the *Declaration of Francisco Javier Gaxiola Fernández in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding; (II) Enforcement of Lifting Order; and (III) Granting Certain Related Relief* (the "Foreign Representative Declaration"), each of which is filed concurrently herewith and are incorporated herein by reference.  The Verified Petition and Foreign Representative Declaration contain the relevant facts for the purposes of this Memorandum of Law.

## ARGUMENT

**I.      The SP Proceeding Is Entitled to Recognition As a Foreign Main Proceeding.**

**a.      This Case Is Proper Under Chapter 15.**

5.      First, venue is proper in this District because the Debtor's principal assets in the United States are located in Delaware.  See 28 U.S.C. § 1410.

6.      Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. See 11 U.S.C. § 1501(b)(1).  This Chapter 15 Case is proper because (a) the SP Proceeding is a

3

"foreign proceeding," (b) this case was commenced by a duly authorized "foreign representative," (c) the Verified Petition and all required supporting documentation were properly filed and (d) the relief sought by the Verified Petition is consistent with the objectives of chapter 15.

**(i)    Venue Is Proper in this District**

7.    Section 1410 of title 28 of the United States Code instructs that venue of a case brought pursuant to chapter 15 of the Bankruptcy Code is proper in the district "in which the debtor has its principal place of business or principal assets in the United States." 28 U.S.C. § 1410(a). As detailed further in the Verified Petition and the Foreign Representative Declaration, the Debtor's primary assets in the United States are located in this District.

8.    A debtor has "principal assets" in a district if it has more than half of its assets in a such district. See Bavelis v. Doukas (In re Bavelis), 453 B.R. 832, 869 (Bankr. S.D. Ohio 2011) (debtor had principal assets in the Southern District of Ohio where "more than 50% of [its] assets" were located in such district); In re Shelton, No. 01-20655, 2001 Bankr. LEXIS 2213, at *19 n.15 (Bankr. D. Idaho Oct. 12, 2001) (principal assets requirement is met by "a simple determination of where the greater dollar value of all property of the estate is located"); Frank v. Neufeld (In re Neufeld), No. 12-02177, 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) (same); but cf. In re Mid Atl. Retail Grp., Inc., No. 07-81745, 2008 Bankr. LEXIS 790 (Bankr. M.D.N.C. Jan. 4, 2008) (ruling that principal assets existed in a judicial district even when debtor only had 19% of its assets in the district).

9.    As described in the Foreign Representative Declaration, the Debtor's primary assets in the United States are approximately $20 million in cash which is located in a bank account in the Debtor's name in Delaware and its 100% equity ownership of (i) AHMSA International, a Delaware corporation, through which the Debtor conducts substantially all of its

4

operations in the United States and (ii) Mexicans & Americans Trading Together, Inc.

("MATT"), also a Delaware corporation.  Pursuant to applicable Delaware law, the Debtor's

ownership of the stock of AHMSA International and MATT are considered located in Delaware

for venue purposes.  See 8 DEL. C. § 169 ("For all purposes of title, action, attachment,

garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation,

the situs of the ownership of the capital stock of all corporations existing under the laws of this

State, whether organized under this chapter or otherwise, shall be regarded as in this State."); see

also In re Global Ocean Carriers Ltd., 251 B.R. 31, 38 (Bankr. D. Del 2000) (holding that debtor

which owned the capital stock of a Delaware corporation owned property in Delaware).

10.     The aggregate book value of the stock of AHMSA International and

MATT is approximately $11,000,000 as of July 31, 2016.  See Foreign Representative

Declaration at ¶ 22.  In total, more than 50% of the Debtor's assets in the United States are

located in this District.

11.     Accordingly, since the Debtor has at least 51% of its assets in the United

States in this District, its principal assets are located in this District, rendering this District a

proper venue to commence this Chapter 15 Case.

### (ii)     The SP Proceeding Is a "Foreign Proceeding."

12.     The SP Proceeding is a "foreign proceeding," as defined in the Bankruptcy

Code.  Section 101(24) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by a
> foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(24).

5

13.    On May 24, 1999, the Debtor filed for protection under the SP Law and, on May 25, 1999, obtained an order from the Mexican Court officially commencing the SP Proceeding and granting certain relief (the "SP Commencement Order").[4]  As discussed in the Foreign Representative Declaration and the SP Expert Declaration, the SP Proceeding is an insolvency proceeding brought under the SP Law, which provides a statutory means for applicants thereunder to reorganize their financial affairs subject to the supervision of a court. Specifically, the SP Law provides for a controlled reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest.

14.    Furthermore, the SP Proceeding is "collective" in nature because it "is comprehensive as to all of the debtor company's assets and creditors located both inside and outside of Mexico[,] . . . recognizing the equality of similar creditors."[5]  SP Expert Declaration at ¶ 9, 11-13 (describing how the SP Law considers the rights of all creditors, including unsecured creditors and foreign creditors); In re British Am. Ins. Co., 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010); In re ABC Learning Ctrs. Ltd., 445 B.R. 318, 328 (Bankr. D. Del. 2010) ("A proceeding is collective if it considers the rights and obligations of all creditors."), aff'd, 728 F.3d 301 (3d Cir. 2013).  Courts addressing whether a proceeding is "collective" look to such proceeding's consideration of creditors in general.  In contrast, non-collective proceedings such as foreclosure proceedings, for example, are instituted to protect the rights of a single, secured creditor.  In re Betcorp Ltd., 400 B.R. 266, 281 (Bankr. D. Nev. 2009); see In re ABC Learning Ctrs., 445 B.R. at 334-35 (using the term "all creditors" to mean creditors in general).  Thus, provided that a

---

[4]    The SP Commencement Order is attached to the Foreign Representative Declaration as Exhibit A.  A certified English translation of the SP Commencement Order is attached to the Foreign Representative Declaration as Exhibit B.

[5]    "Foreign creditors are also treated identically to Mexican creditors under the SP Law and are offered the same opportunities to participate in SP Proceedings as Mexican creditors."  SP Expert Declaration at ¶ 13.

proceeding "contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action," it is "collective" in nature.  In re British Am. Ins. Co., 425 B.R. at 902; see In re British Am. Isle of Venice (BVI), Ltd., 441 B.R. 713, 717-18 (Bankr. S.D. Fla. 2010) (holding that proceeding was collective in nature where all creditors had right to be heard).

15.    The Southern District of New York recognized that this specific SP Proceeding, "much like our Chapter 11 bankruptcy proceedings," is a proceeding "intended to relieve debtors from the immediate pressure of creditor's claims and suits in that they can reorganize their affairs, restructure their debts, and ultimately pay them." Ecoban Fin. Ltd. v. Groupo Acerero del Norte, 108 F. Supp. 2d 349, 350 (S.D.N.Y 2000), aff'd sub nom. Ecoban Fin. Ltd. v. Altos Hornos de Mexico, S.A. de C.V., 2 F. App'x 80 (2d Cir. 2001) ("Ecoban").  In Ecoban, the plaintiff noteholder sued AHMSA to collect on a series of past due notes.  AHMSA moved to dismiss the complaint on the ground of international comity and in deference to the SP Proceeding pending in the Mexican Court.  The court in Ecoban, in considering whether the noteholder could proceed to collect against AHMSA in a United States court, reviewed the SP Law and considered the purposes for which comity, like the cooperation principles underlying chapter 15, is granted: "Having examined the Mexican law on SOP's [sic], and considered the expert reports from each side, I hold that the SOP's [sic] are not fundamentally unfair, or in violation of American public policy, and that comity is appropriate in the circumstances of these cases." Ecoban, 108 F. Supp. 2d at 351.

16.    In the SP Proceeding, the Debtor considered the rights and obligations of its creditors and proposed the Mexican Plan that provides for the treatment of all unsatisfied claims against the Debtor.  Because the SP Proceeding is focused on treatment of the broad array

of creditors and stakeholders, the SP Proceeding is "collective" in nature and, thus, is a "foreign proceeding," as such term is defined in section 101(23) of the Bankruptcy Code.

17.     Specifically, the SP Proceeding has the following characteristics: (a) notice of the proceeding was provided by mail and by publication to all of the Debtor's creditors; (b) a stay of proceedings prevented individual creditors from obtaining an advantage over similarly situated creditors; (c) the Debtor was prevented from making preferential payments to creditors; (d) consistent with the requirements of the SP Law, the National Chamber of Transformation Industry was appointed to serve as the "sindico" (the "Sindico") to monitor the Debtor's conduct and assist the Mexican Court, which delegated its duties to the Foreign Representative, as permitted under the SP Law; (e) Bank of America, N.A. was appointed by creditors as an "intervenor" to oversee and monitor the conduct of the Sindico and the Debtor; (f) deadlines for filing proofs of claim were established; (g) distributions to creditors are to be made pursuant to the Mexican Plan on a *pro rata* basis; (h) the Mexican Plan provides for distributions pursuant to statutorily prescribed priorities; and (i) creditors were entitled to (x) vote to accept or reject the Mexican Plan and (y) object to the Mexican Plan.  Accordingly, for these reasons, among others, the SP Proceeding qualifies as a "foreign proceeding" under the Bankruptcy Code.

> **(iii)     The Foreign Representative Is a Proper "Foreign Representative."**

18.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

19.     On August 3, 2016, the Mexican Court issued a resolution (the "Appointment Resolution") appointing the Foreign Representative, a natural person, to serve as a foreign representative of the Debtor in any case to be commenced for the Debtor under chapter 15 of the Bankruptcy Code.  In addition, the terms of the Mexican Plan specifically authorize the Debtor to seek chapter 15 relief enforcing the Mexican Plan in the United States.  See Mexican Plan ¶ 8, Exhibit F to the Foreign Representative Declaration (". . .the [Debtor] may carry out the necessary cancellation procedures it deems appropriate, this General Payment Agreement expressing the permission and consent do to so by the Creditors, ***including, if the company deems it advisable, approval of this [Mexican Plan] under the rules of Chapter 15 of the Bankruptcy Code of the United States of America***.") (emphasis added).  As such, the Foreign Representative, an individual duly appointed by the Mexican Court to represent the Debtor in this Chapter 15 Case, is an authorized foreign representative of the Debtor.

> **(iv)     The Foreign Representative Filed Proper Documentation to Commence this Chapter 15 Case.**

20.     The Chapter 15 Case was duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by the filing of the Verified Petition under section 1515(a) of the Bankruptcy Code, which was accompanied by all documents and information required by sections 1515(b) and (c).  See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), aff'd, 389 B.R. 325 (S.D.N.Y. 2008).

21.     In addition, in accordance with section 1515(b)(1)-(2) and (d) of the Bankruptcy Code, the Foreign Representative has submitted evidence, translated into English, of the existence of the SP Proceeding and the appointment of the Petitioner as the foreign representative thereof.  See Exhibits A, B, C, D, H and I to the Foreign Representative

9

Declaration (together containing true and correct copies of the SP Commencement Order, the

Lifting Order and the Appointment Resolution, along with certified translations of each from

Spanish to English).

22.     Further, in accordance with section 1515(c) of the Bankruptcy Code, the

Foreign Representative has also filed concurrently herewith the *Statement of Foreign*

*Representative In Support of Chapter 15 Petition for Recognition of Foreign Proceeding*, which

contains a statement identifying the SP Proceeding as the only foreign proceeding currently

pending with respect to the Debtor.

23.     Because the Foreign Representative has satisfied the requirements set

forth in section 1515 of the Bankruptcy Code, the Chapter 15 Case has been properly

commenced.

> **(v)     The Verified Petition Is Consistent With the Purpose of**
> **Chapter 15.**

24.     One of the stated objectives of chapter 15 is the "fair and efficient

administration of cross-border insolvencies that protects the interests of all creditors, and other

interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).  The Chapter 15 Case has been

commenced for the purpose of obtaining the assistance of this Court to enact and enforce the

Mexican Plan and the Lifting Order in the United States and, among other things, to prohibit the

Debtor's creditors from taking certain actions in the United States that would undermine the

unified, collective, and equitable resolution of the Debtor's liabilities as embodied in the

Mexican Plan.  As such, the Verified Petition is consistent with the purpose of chapter 15 and the

cross-border coordination it promotes.

**b.**      **The SP Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code.**

25.      This Court should recognize the SP Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests.  See 11 U.S.C. § 1517(b)(1).  While the Bankruptcy Code does not define "center of main interests," it does provide that, absent evidence to the contrary, the debtor's headquarters is presumed to be the center of the debtor's main interests.  11 U.S.C. § 1516(c); see In re Ir. Bank Resolution Corp. (In Special Liquidation), No. 13-12159, 2014 Bankr. LEXIS 1990, at *53 (Bankr. D. Del. Apr. 30, 2014) (holding that a debtor's center of main interests was in Ireland where there was no objection or evidence offered "to rebut the presumption that [the debtor's] 'center of main interests' is in Ireland"); Bear Stearns, 374 B.R. at 127, 130 (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary").  Additionally, in Bear Stearns, Judge Lifland suggested that:

> [v]arious factors could be relevant to such a determination, including: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

Id. at 128 (citing In re SPhinX, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007)).

26.      Courts also take into consideration the expectations of creditors and other interested third parties, as a company's center of main interests must be "ascertainable to third parties."  See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127,

136-38 (3d Cir. 2013) (analogizing a company's principal place of business to its center of main interests); In re Millennium Global Emerging Credit Master Fund Ltd., 474 B.R. 88, 93 (S.D.N.Y. 2012).

27.     Notably, the analysis of a foreign debtor's center of main interests is a flexible one, as "courts do not apply any rigid formula or consistently find one factor dispositive." In re Betcorp Ltd., 400 B.R. at 290. When applying this totality of the circumstances test, courts "generally equate the center of main interests with the concept of a 'principal place of business' under United States law." See, e.g., In re Millenium Global Emerging Credit Master Fund Ltd., 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (noting that "plain English" meaning of "center of main interests" in American jurisprudence is "principal place of business" and that courts have used such terms "interchangeably").

28.     Here, the Debtor's center of main interests is in Monclova, Coahuila, Mexico. The Debtor is a company organized under the laws of Mexico with its registered office and executive headquarters located in Monclova, Coahuila, Mexico. In addition, the Debtor (a) has its main steel making facilities and corporate headquarters offices in Monclova, (b) is operationally integrated in Monclova, (c) is run by centralized senior management based in Monclova, and (d) houses most of its cash management and accounting functions in Monclova. As of August 16, 2016, the Debtor has approximately 22,000 employees, the majority of which are residents of and work in Mexico. The Debtor's most senior executives, including, but not limited to, the chief executive officer, chief operating officer, chief financial officer, and the legal director, operate out of the Debtor's executive headquarters in Monclova. Furthermore, most of the Debtor's creditors and shareholders are located in Mexico.

29.     Simply put, nearly all of the Debtor's corporate business is conducted and directed from Mexico. As such, Mexico is "ascertainable by third parties" as the Debtor's center

of main interests.  Accordingly, given that the SP Proceeding is pending in Monclova, Coahuila, Mexico (the Debtor's center of main interests), the SP Proceeding should be recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

**c.      The Foreign Representative Is Entitled to an Order Granting Recognition of the SP Proceeding as a Foreign Main Proceeding.**

30.      An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met.  See 11 U.S.C. § 1517.  As set forth above, (i) the SP Proceeding is a "foreign main proceeding" within the meaning  of section 1502 of the Bankruptcy Code, (ii) the Foreign Representative qualifies as a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and (iii) the Verified Petition meets the requirements of section 1515 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515."  11 U.S.C. §1517(a).  As explained above, the Foreign Representative has satisfied subsections 1517(a)(1), (2), and (3) of the Bankruptcy Code.

31.      Finally, in compliance with the introductory language of section 1517 of the Bankruptcy Code, the relief requested by the Foreign Representative is not manifestly contrary to, but rather is consistent with, United States public policy.

32.      As an initial matter, courts have construed the public policy exception in section 1506 of the Bankruptcy Code very narrowly.  See In re Ashapura Minechem Ltd., 480 B.R. 129, 139 (S.D.N.Y. 2012) (explaining that courts have "uniformly" interpreted the public

13

policy exception "narrowly and applied it sparingly"); <u>In re British Am. Isle of Venice (BVI),</u>

<u>Ltd.</u>, 441 B.R. at 717 (same).

33.     The public policy exception contained in section 1506 has no application

here; in fact, recognizing the SP Proceeding as a foreign main proceeding is consistent with the

public policy of the United States.  It is well established that one of the fundamental goals of the

Bankruptcy Code is the centralization of disputes involving a debtor.  <u>See, e.g.</u>, <u>Rico Corp. v.</u>

<u>Arundotech, LLC (In re Arundotech, LLC)</u>, BAP No. 08-1282, 2009 Bankr. LEXIS 1705, at *9

(B.A.P. 9th Cir. May 4, 2009) (noting that "one of the central objectives of bankruptcy is to

centralize disputes regarding property of the estate and the payment of creditors, so that the

estate can be administered efficiently"); <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 989 (2d Cir.

1990) ("The Bankruptcy Code 'provide[s] for centralized jurisdiction and administration of the

debtor, its estate and its reorganization in the Bankruptcy Court . . . .'") (internal citations

omitted) <u>cert. denied</u> <u>Airline Pilots Ass'n, Int'l v. Shugrue</u>, 502 U.S. 808 (1991).  Indeed, as one

court has noted, "the firm policy of American courts is the staying of actions against a

corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  <u>Cornfeld v.</u>

<u>Investors Overseas Servs., Ltd.</u>, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing

Canadian liquidation proceeding would not violate laws or public policy of New York or the

United States).

34.     The United States District Court for the Southern District of New York, in

determining whether to extend comity to proceedings under the SP Law, specifically found that

such proceedings do not violate the public policy of the United States.  <u>Ecoban</u>, 108 F. Supp. 2d

at 352.  In <u>Ecoban</u>, the court specifically found that the SP Law "does not violate fundamental

principles of procedural fairness, or the public policy of New York or of the United States."  <u>Id.</u>

Indeed, the court recognized that "it is clear that creditors are given a legitimate opportunity to

make their claims, and are afforded avenues through which grievances may be raised and addressed during the [SP Law] process. Nothing in the Mexican law indicates that the ability of foreign creditors to participate in the process is in any way limited, or that such creditors are otherwise treated differently from Mexican creditors. Nor do I find anything inherently unfair about the [SP Law] process." Id. at 353. See also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 427-28 (2d Cir. 2005) ("JP Morgan") ("Nothing in the record before us suggests that the actions taken by the Mexican bankruptcy court [in the SP Proceeding] are not approved or allowed by American law").

        35.     Additionally, the SP Proceeding is similar to cases under chapter 11 of the Bankruptcy Code in that it provides for a centralized process to assert and resolve claims against an estate, which process resulted in equitable distributions to creditors under the Mexican Plan. See Ecoban, 108 F. Supp 2d. at 350 (a proceeding under the SP Law is "much like our Chapter 11 bankruptcy proceedings in that it is "intended to relieve debtors from the immediate pressure of creditor's claims and suits in that they can reorganize their affairs, restructure their debts, and ultimately pay them."); JP Morgan, 412 F.3d at 427-28 (noting that rulings by the Mexican Court in the SP Proceeding were "approved or allowed by American law"). Recognizing the SP Proceeding and enjoining certain actions or proceedings with respect to the Debtor and its assets here in the United States will assist the orderly administration of the Debtor's assets and implementation of the restructuring provided in the Mexican Plan. Such orderly administration is demonstrably consistent with the public policy of the United States, as embodied in the Bankruptcy Code. Absent the relief requested, there is a possibility that the Debtor's assets in the United States would be subject to attachments and/or post-judgment enforcement proceedings brought by individual creditors that might flout the injunction imposed by the Mexican Court and the Mexican Plan and the Lifting Order issued by the Mexican Court.

15

Individual creditor litigation could result in the Debtor having to expend unnecessary funds to enforce the injunction in multiple jurisdictions or to prevent the piecemeal disposition of the Debtor's assets in contravention of the SP Proceeding and the Mexican Plan.  Enforcement of the Mexican Plan and the Lifting Order will result in the equal treatment of similarly situated creditors of the Debtor that both the SP Law and the Bankruptcy Code seek to promote.  Avoiding individual creditor litigation through the recognition of the SP Proceeding and enforcement of the Mexican Plan and the Lifting Order in the United States is not just consistent with United States public policy, but in fact promotes the very public policies embedded in the Bankruptcy Code.

36.     Furthermore, recognition of the SP Proceeding would foster cooperation between the Mexican Court and this Court in respect of the Debtor's restructuring.  By granting recognition to the SP Proceeding and enforcing the Mexican Plan and the Lifting Order in the United States, this Court can effectively assist the Mexican Court in the orderly administration of the Debtor's assets.  Recognition of the SP Proceeding would promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested entities.  If creditors' actions with respect to the Debtor's United States assets are not effectively stayed, the uniform and orderly voluntary administration of the Debtor in the SP Proceeding will be jeopardized.

37.     Finally, the relief requested by the Foreign Representative as part of the commencement of the Chapter 15 Case would protect the Debtor's assets located in the United States.  Absent such relief, significant assets of the Debtor may be depleted and available resources may be expended unnecessarily to defend collection and other actions brought in the United States.  The Debtor has approximately hundreds of customers and vendors that depend on AHMSA's business and/or products.  Accordingly, the relief requested would further the

objectives of chapter 15 by assisting the orderly voluntary administration of the Debtor in the SP

Proceeding, consistent with United States public policy.

## II. Recognition of the Lifting Order and Enforcement of the Mexican Plan Promotes the Goals of Chapter 15.

38. In connection with the recognition of the Lifting Order, the Foreign

Representative seeks enforcement in the United States of the Mexican Plan approved by the

Mexican Court. Recognizing the Lifting Order and enforcing the Mexican Plan is consistent

with the goals of international cooperation and assistance to foreign courts embodied in chapter

15 of the Bankruptcy Code. See 11 U.S.C. § 1501(a). Upon recognition, section 1521 of the

Bankruptcy Code permits the Court to grant any appropriate relief. The relief provided in the

Lifting Order is necessary to promote the finality of the restructuring and the fair administration

of the Mexican Plan.

39. The Lifting Order provided the Debtor with relief that is similar to and

consistent with the relief that is available under the Bankruptcy Code and routinely approved in

connection with confirmation of a chapter 11 plan. Specifically, the Lifting Order approved the

terms of the Mexican Plan, which, as described in greater detail in the Verified Petition,

generally provides for, among other things:

- a claims reconciliation process;

- equitable treatment of creditors, including all general unsecured creditors receiving the payment of all principal and interest accrued to the date of the commencement of the SP Proceeding within three years of the Lifting Order—which constitutes payment in full under the SP Law;

- the opportunity for all creditors to vote to accept or reject their proposed treatment, including notice being provided to all creditors (including in national newspapers) and all creditors being permitted to attend the Creditors Meeting, vote on the Mexican Plan and lodge oral or written objections to the Mexican Plan;

- no discriminatory treatment to foreign creditors;

17

- creditors having the option to elect cash and equity in the reorganized company in exchange for a portion of their payment rights;

- discharge of the Recognized Claims and the Debtor's incurrence of the obligation to make the SP Three-Year Payments in full within three years of the Lifting Date, and an injunction preventing creditors from attempting to recover on account of the SP Three-Year Payments before such payments come due;

- the release of all claims against the Debtor and the cancellation of all debentures, indentures, notes, certificates, agreements, invoices, and other instruments evidencing claims; and

- the Debtor's emergence from the SP Proceeding upon consummation of all required conditions precedent.

40.     Other terms of the Lifting Order include, among others:

- authorization of the Debtor to take all steps and actions necessary or appropriate to implement the Mexican Plan;

- a direction to the Sindico to report to the Mexican Court if there is any failure by the Debtor with respect to carrying out the provisions of the Mexican Plan; and

- provisions related to document preservation.

**a.     Principles of Comity Embodied in Chapter 15 Strongly Favor Recognition of the Lifting Order and Enforcement of the Mexican Plan.**

41.     Upon recognition of the SP Proceeding as a "foreign main proceeding," longstanding principles of international comity embodied in chapter 15 heavily weigh in favor of recognizing the Lifting Order and enforcing the Mexican Plan in the United States. "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings." Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign bankruptcy proceedings.").

42.     Accordingly, granting comity to judgments in foreign proceedings is appropriate as long as parties are provided the fundamental protections assured to litigants in the United States. This principle of comity is one that is well founded in American jurisprudence.

18

See Hilton v. Guyot, 159 U.S. 113, 202-203 (1895) (applying comity analysis to French judgment obtained by foreign liquidator against U.S. citizens, and finding it was "satisfied that [] there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries . . . ."). Indeed, courts have noted that comity is particularly important in the context of collective insolvency proceedings, which require that "the assets of a debtor are dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion. Consequently, American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." Cunard S.S. Co. v. Salen Reefer Services AB, 773 F.2d 452, 456-58 (2d Cir. 1985) (citing Hilton). Accordingly, in considering judgments rendered by foreign courts in insolvency matters, comity may be withheld only if its extension would cause American creditors to be "treated in some manner inimical to this country's policy of equality." Id. at 459 (citation omitted).

43.     The purpose of chapter 15 is to continue and enhance the United States' long history of granting comity in cross-border insolvency proceedings. See 11 U.S.C. § 1501; In re Atlas Shipping A/S, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."). In fact, "Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation." In re Fairfield Sentry Ltd., 484 B.R. 615, 627 (Bankr. S.D.N.Y. 2013) (citing to 11 U.S.C. § 1501(a) in specifying that chapter 15's "most basic objective is to foster the orderly

19

administration of cross-border restructurings"); 11 U.S.C. § 1504 (indicating that "any case commenced under chapter 15 is 'ancillary' to a foreign proceeding pending elsewhere"); 11 U.S.C. § 1525 ("[T]he [ancillary] court shall cooperate to the ***maximum extent possible*** with a foreign court") (emphasis added); 11 U.S.C. § 1527 (stating cooperation "may be implemented by ***any appropriate means***") (emphasis added)).[6]

      44.    Specifically, under the SP Law, the prepetition debts of the Debtor were discharged on the Lifting Date, however, on the same date, the Debtor also incurred the obligation to make the SP Three-Year Payments in the amount of the aggregate amount of Recognized Claims, which will not be formally discharged until the Debtor fully makes the SP Three-Year Payments. The Lifting Order contains an injunction preventing creditors from collecting upon such prepetition debts. Accordingly, extending the injunction issued by the Mexican Court to the Debtor's assets in the United States will assist the Mexican Court with the orderly process of resolving and ultimately discharging the Debtor's debts and ensuring that no creditors can attempt to recover on account of such debts outside of the recoveries provided under the approved Mexican Plan.

---

[6]    Furthermore, the close relationship between the United States and Mexico, our immediate neighbor to the south and fellow member of NAFTA, warrants even greater respect for the Lifting Order. This concept was embodied in the American Law Institute's Principles of Cooperation Among the NAFTA Countries (2003) (the "ALI Principles"), which were developed by experts in insolvency law from all three NAFTA countries — Canada, Mexico, and the United States — as "principles and methods of cooperation that would assist in multinational bankruptcy cases within NAFTA, by giving bench and bar a workable baseline of agreed approaches to such cases." J. L. Westbrook, Multinational Enterprises in General Default: Chapter 15, the ALI Principles, and the EU Insolvency Regulation, 76 Am. Bankr. L.J. 1, 4 (2002). "[T]he [ALI] Principles were drafted with Chapter 15 in mind and provide authority for resolution of a number of issues not fully addressed by Chapter 15 or addressed only in part." See J. L. Westbrook, Chapter 15 At Last, 79 Am. Bankr. L.J. 713, 714 (2005). Two of the ALI Principles directly address the enforcement in one NAFTA country of a reorganization plan approved in another. First, Procedural Principle 26 "would make a reorganization plan binding on any party that participates in the proceeding or accepts its fruits." J. L. Westbrook, Chapter 15 and Discharge, 13 Am. Bankr. Inst. L. Rev. 503, 515 (2005). Second, Procedural Principle 27 "would bind to a reorganization plan unsecured creditors who did not participate in the bankruptcy proceeding in the foreign jurisdiction." Id. Thus, ALI Procedural Principles 26 and 27, which were drafted for the specific purpose of guiding courts in a NAFTA country asked by a foreign representative to enforce a reorganization plan approved in another NAFTA country, clearly suggest that the Mexican Plan and the Lifting Order should be fully enforced and recognized in the United States in this Chapter 15 Case.

45.     Accordingly, the principles of international comity embodied in chapter 15 weigh strongly in favor of enforcement of the Lifting Order.

### b.     Enforcement of the Lifting Order Is Authorized and Warranted Under Chapter 15.

46.     Sections 1507 and 1521 of the Bankruptcy Code embody the principles of comity and provide a statutory basis for providing a foreign representative with discretionary relief, including the enforcement of orders issued by the foreign court staying legal actions or confirming a reorganization plan.[7]  Section 1507 of the Bankruptcy Code provides that a court "may provide additional assistance to a foreign representative under this title or under the laws of the United States." 11 U.S.C. § 1507.[8]  Additionally, section 1521 of the Bankruptcy Code provides a general grant of authority that "[u]pon recognition of a foreign proceeding … where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of any creditors, the court may grant any appropriate relief," 11 U.S.C. § 1521(a), and also sets forth a non-exhaustive list of specific types of relief the court may grant a foreign representative.  See, e.g., 11 U.S.C. § 1521(a)(1) (staying commencement or continuation of actions); § 1521(a)(2) (staying execution against debtor's assets); § 1521(a)(5) (entrusting administration or realization of debtor's assets within United States); § 1521(a)(7) (any additional relief); § 1521(b) (turnover of debtor's assets).

---

[7]     Additionally, section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" which, in a chapter 15 case, includes the purposes explicitly set forth in section 1501 of the Bankruptcy Code including fostering cooperation, greater legal certainty, fair and efficient administration, maximization of stakeholder value, and the rescue of financially distressed businesses in the context of cross-border insolvency cases.  11 U.S.C. §§ 105(a), 1501(a)(1). Legislative history indicates that section 1521 is not intended to "expand or reduce the scope of relief currently available in ancillary cases under sections 105 or 304 . . ." H.R. Rep. No. 109-31, Pt. 1 at 115-16 (2005) as reprinted in 2005 U.S.C.C.A.N. 88, 172 (2005).

[8]     Although the Foreign Representative submits that the requested relief is available under section 1521 and thus he need not rely on section 1507 for relief, the requested recognition of the Lifting Order and the enforcement of the Mexican Plan nonetheless easily satisfies the factors of section 1507 as well.

21

47.     Most, if not all, of the relief provided in the Lifting Order is available under section 1521 of the Bankruptcy Code.  For example, as noted above (see ¶ 44), the Mexican Plan (as approved by the Lifting Order) precludes creditors from bringing any action against the assets of the Debtor based on prepetition debts.  See 11 U.S.C. §§ 1521(a)(1) and (a)(2).  In connection (and to the extent not otherwise stayed under sections 1520 and 362 of the Bankruptcy Code), the Foreign Representative requests that the Court, in its discretion under section 1521 of the Bankruptcy Code, extend the permanent injunction in the Mexican Plan as approved through the Lifting Order against any parties that may attempt to commence prepetition or post-petition actions and/or claims in the United States against the Debtor or its property.  Such an injunction will help ensure the fair and efficient administration of the SP Proceeding, which aims to protect all parties in interest and to require that all the Debtor's creditors be bound by the terms of the Mexican Plan, as approved by the Lifting Order.

48.     Courts have routinely recognized the need for such an injunction under similar circumstances.  Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d at 714 ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors cannot be bound, a plan of reorganization would fail."); see also Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d at 458 ("The granting of comity to a foreign proceeding enables the assets of a debtor to be dispersed in an equitable, orderly and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

49.     Here, it is conceivable that certain creditors may seek judgments in the United States against the Debtor or its property, seeking to obtain more than the *pro rata* treatment to which they are entitled under the Mexican Plan.  If such creditors can effectively evade the terms of the Mexican Plan and the Lifting Order by commencing actions in the United

22

States, the Debtor would be left to defend against these suits, regardless of their merit. This could deplete the resources of the Debtor's restructured business and prejudice its reorganized value. For these reasons, extending the permanent injunction would support implementation of the Mexican Plan and protect the interests of all of the Debtor's creditors in having claims against the Debtor and its estate valued and paid on a consistent, non-discriminatory basis as determined by the Mexican Court.

50.    Pursuant to section 1521(e) of the Bankruptcy Code, the federal law standard for injunctive relief applies in chapter 15 cases. See 11 U.S.C. § 1521(e). Therefore, to obtain a permanent injunction, a movant must demonstrate (a) that an injunction is required to avoid irreparable harm and (b) that he will in fact win on the merits. See Stolt-Nielsen, S.A. v. United States, 442 F.3d 177, 185 (3d Cir. 2006); see also NextG Networks of N.Y., Inc. v. City of N.Y., No. 03-9672, 2006 WL 538189, at *8 (S.D.N.Y. Mar. 6, 2006).

51.    Irreparable harm exists where the orderly determination of claims against a debtor and the fair distribution of a debtor's assets are disrupted. See In re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule…irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors.").

52.    Here, the Foreign Representative has every reason to believe that he will be successful on the merits in his request for recognition of the SP Proceeding as a foreign main proceeding and, in any event, such recognition will occur simultaneously with or prior to the granting of any relief to the Foreign Representative pursuant to section 1521 of the Bankruptcy Code. Moreover, allowing creditors to litigate separately any claims against the Debtor or its U.S. assets would threaten the success of the SP Proceeding and the Mexican Plan and may

23

divert funds needed to maximize the value of the Debtor's estate, which would constitute irreparable harm.  See MMG LLC, 256 B.R. at 555.

53.    In addition, the injunction relief sought herein would not cause undue hardship or prejudice to the rights of any U.S. Recognized Creditors and Noteholders, as defined below.  In fact, the Mexican Plan and the voting procedures applied uniformly to all of the Debtor's creditors, wherever they resided—stated otherwise, all creditors were provided with the opportunity to participate in the Creditors Meeting and the voting process in accordance with the SP Law.  Additionally, the Debtor also established for (a) creditors whom the Company believed was a holder of a recognized claim that was organized or domiciled in, or a citizen of, the United States of America (the "U.S. Recognized Creditors") and (b) beneficial owners of the Series A Notes, Series B Notes and Senior Discount Convertible Notes (the "Noteholders") special procedures to vote on the Mexican Plan and to make Equity Elections that were in addition to those provided to creditors in general.  In short, due process has been, and continues to be, preserved for all stakeholders in connection with the SP Proceeding, and the injunctive relief sought herein does nothing more than give effect to the Lifting Order and the Mexican Plan in the United States.

54.    Furthermore, the exchange of the Debtor's equity to certain creditors is also clearly relief available under sections 1521(a)(5) (entrusting administration and realization of debtor's United States assets to a foreign representative) and 1521(b) (entrusting distribution of debtor's United States assets to foreign representative).  Additionally, such transfers or distributions are forms of relief plainly available and commonly approved in chapter 11 cases. Accordingly, to the extent certain terms of the Lifting Order do not fall under a specific subsection of section 1521 of the Bankruptcy Code, they are nevertheless authorized under the general grant of authority under section 1521(a).

55.     Additionally, section 1507 of the Bankruptcy Code further provides, *inter alia*, that this Court may provide "additional assistance" to the Foreign Representative, consistent with principles of comity.

56.     Here, the Mexican Plan was a comprehensive restructuring of the Debtor's indebtedness, forged by years of negotiations with its principal creditors.  The process by which the Mexican Plan was developed, voted upon, and ultimately approved by the Mexican Court comports with principles of notice, fairness, and creditors' opportunity to be heard.  In the SP Proceeding, the Debtor formally proposed the Mexican Plan months in advance of the Creditors Meeting where creditors had the opportunity to vote to accept or reject the Mexican Plan. Furthermore, while not required by SP Law, the Debtor sent to all U.S. Recognized Creditors and Noteholders an English language disclosure statement (the "Disclosure Statement"),[9] which provided detailed information about the Mexican Plan, the creditors' rights and options under the Mexican Plan, and information about the Debtor's business, including recent business metrics. The Debtor sent the Disclosure Statement to all U.S. Recognized Creditors and Noteholders to ensure that such creditors would receive both notice and adequate information regarding the Mexican Plan and the Creditors Meeting.  At the Creditors Meeting, all creditors holding a Recognized Claim, or with respect to U.S. Recognized Creditors and Noteholders for whom the Debtor established special procedures, were entitled to vote, and the Mexican Plan was approved by the Requisite Creditor Consent.  Creditors also had the opportunity to object to the Mexican Court's approval of the Mexican Plan if they voted against the Mexican Plan, both by (i) providing written objections the business day before the hearing to approve the Mexican Plan or (ii) making an oral objection at the hearing to approve the Mexican Plan (even if a written

---

[9]     A copy of the Disclosure Statement is attached to the Foreign Representative Declaration as Exhibit G.

objection was not previously filed).[10]  Stated otherwise, all creditors, regardless of domicile, were given equal and ample opportunity to appear and to be heard in the Mexican Court with respect to any and all of their objections of the Plan, and were treated fairly.  The foregoing process is strikingly similar to the process for soliciting and confirming a plan of reorganization under chapter 11 of the Bankruptcy Code.

57.    Given the process by which the Mexican Plan was developed and the degree of support it has received, it can hardly be contended that the entry of the Lifting Order was other than fair and impartial, allowing all creditors the right to be heard by the Mexican Court.  Moreover, the Mexican Plan expressly allowed the Foreign Representative to commence a proceeding in the United States to seek recognition of the Mexican Plan and the Lifting Order in order to confirm that both are binding and effective in the United States.  The Foreign Representative thus respectfully submits that the Court enter the Proposed Order giving full force and effect to the Lifting Order (and thus the Mexican Plan) in the United States.  Doing so is entirely consistent with long standing principles of international comity and cooperation and would ensure the fair and efficient administration of the Mexican Plan.

58.    Pursuant to section 1522(a) of the Bankruptcy Code, relief pursuant to section 1521 is available only if "the interests of creditors and other interested parties" are "sufficiently protected."  See 11 U.S.C. § 1522(a).  Granting recognition to the SP Proceeding and enforcing the Lifting Order is appropriate because it will leave the Debtor's creditors and

---

[10]    Under the SP Law, only "Recognized Creditors" were entitled to vote on or object to the Mexican Plan, and the trustee under each of the indentures for the Debtor's Notes filed a claim on behalf of all noteholders and was the "Recognized Creditor" with respect to the Notes.  In order to allow individual holders of the Notes the opportunity to vote on and object to the Mexican Plan, the Debtor provided detailed information to its creditors, including in the Disclosure Statement, regarding how a holder of the notes could "individualize" its claim under the SP Law, which would permit the individualized creditor to vote on or object to the Mexican Plan.  The Debtor retained counsel to assist its creditors with the individualization process, and paid up to $2,000 of the retained counsel's fees in connection with each creditor's individualization process, which the Debtor believed would be sufficient to pay the fees incurred in the typical individualization process.

26

other interested parties "sufficiently protected."  While the Bankruptcy Code does not explicitly

define "sufficiently protected" in section 1522(a), the legislative history indicates that the section

was meant to ensure that "the foreign proceeding [is not] seriously and unjustifiably injuring

United States creditors."  House Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005).  Courts have

applied a balancing test that considers the "interests of the creditors and other interested entities,

including the debtor," and the "weighing of the interests of the foreign representative (debtor) in

receiving the requested relief (the debtor) in receiving the requested relief against the competing

interests of those who would be adversely affected by the grant of such relief" to ensure that

creditors are adequately protected.  See Jaffe v. Samsung Elecs. Co., 737 F.3d 14, 29 (4th Cir.

2013), cert. denied, 135 S. Ct. 66 (2014); Chen v. Ernst & Young Inc. (In re Nortel Networks

Corp.), No. 10-0314, 2013 U.S. Dist. LEXIS 162887, at *13 (D. Del. Nov. 15, 2013) (describing

the balancing test performed by the Bankruptcy Court pursuant to section 1522(a)).  Creditors of

the Debtor, including creditors located in the United States, were afforded due process and the

ability to participate in the SP Proceeding similar to the level of participation available to

creditors in a chapter 11 proceeding.  All creditors were able to participate in the Creditors'

Meeting, had the opportunity to vote to accept or reject the Mexican Plan, and had the

opportunity to object and be heard by the Mexican Court with respect to the approval of the

Mexican Plan.  Additionally, the Debtor sent the Disclosure Statement to all U.S. Recognized

Creditors and Noteholders, which provided a detailed overview of the SP Proceeding, the

Mexican Plan, the Lifting Order, and the creditors' related rights thereto.  The Mexican Plan also

treats creditors located in the United States identically to Mexican creditors.  Accordingly, the

Debtor's creditors and other interested parties are "sufficiently protected" pursuant to section

1522(a) of the Bankruptcy Code.

### c.      The Requested Relief Is Not Manifestly Contrary to the Public Policy of the United States.

59.      Finally, as discussed above, the primary limitation on relief under chapter 15 is section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action governed by chapter 15 if such "action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  As previously discussed, the legislative history of section 1506 of the Bankruptcy Code makes clear that the public policy exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States." In re Ephedra Prods. Liab. Litig., 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing H.R. Rep. No. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172).  Accordingly, consistent with longstanding comity caselaw in the United States, courts have held that the public policy exception "should be interpreted restrictively" and that "a foreign judgment should generally be accorded if its proceedings are . . . fair and impartial."  In re Ephedra, 349 B.R. at 90-91 (affirming foreign judgment issued in the absence of a jury trial).

60.      As described above, the process by which the Mexican Plan was developed, solicited and approved by the Mexican Court is similar to the chapter 11 process for soliciting and confirming a plan of reorganization, and comports with the principles of fairness and creditors' opportunities to be heard which underlie the Bankruptcy Code.  Given the circumstances in which the Lifting Order was entered, and in particular the overwhelming creditor approval of the Mexican Plan and support for the entry of the Lifting Order, it cannot be said that the SP Proceeding was procedurally unfair in a manner that runs afoul of section 1506 of the Bankruptcy Code.  Indeed, granting the requested relief furthers the United States' public policy respecting foreign proceedings.

*Remainder of Page Intentionally Left Blank*

28

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Verified Petition, and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware  
       August 16, 2016

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Matthew B. Lunn*  
Matthew B. Lunn (No. 4119)  
Maris J. Kandestin (No. 5294)  
Ian J. Bambrick (No. 5455)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone:  (302) 571-6600  
Facsimile:  (302) 571-1253

*Counsel to the Foreign Representative*